Billy Lee WALTER, Appellant,

v.

The STATE of Texas.

No. 1321–99.

Court of Criminal Appeals of Texas.

Sept. 20, 2000.

for outstanding warrants and called a canine unit. The canine unit arrived during the warrant check. Before allowing his dog to search, canine unit Officer Miller looked into Walter's truck and saw a clear plastic bag of marijuana in the floorboard. Was Miller's observation of the bag an illegal search? We conclude that it was not.

### Facts

While on duty, Carrol was informed by Officer Vasquez that some sort of narcotics activity appeared to be going on in Mountain View Park. Carrol went to investigate. Although nobody was in the park, he did see a truck leaving the area. He noticed the truck commit a traffic violation, specifically, failing to signal the intent to turn "prior to 100 feet of an intersection." Carrol stopped the truck for the violation and asked the driver, Walter, some routine questions. Walter and his passenger told Carrol that they had been in the park playing basketball. Since Walter was wearing jeans, a long-sleeved shirt, and cowboy boots, and since no basketball was in sight, Carrol thought the story was suspicious.

Carrol testified that he requested Officer Miller, the canine handler, to come to the scene. At the same time, he began a standard warrant check on Walter. When Miller arrived, the warrant check was not yet complete. Carrol testified that if the warrant check had been completed before Miller arrived, and there had been no outstanding warrants, he would not have detained Walter any further. But Miller arrived first, about ten to fifteen minutes after being called.

Carrol testified that Walter and his passenger had gotten out of the truck and were sitting on the tailgate when Miller arrived. They had left the doors to the truck open. Before allowing his dog to search, Miller walked around the truck and looked inside it to ensure there was nothing in the truck that would harm his dog. During this visual check, Miller saw

Kirk Hawkins, San Angelo, for appellant.

Jeffrey L. Van Horn, First Asst. State Atty., Matthew Paul, State's Atty., Austin, for the State.

### OPINION

KEASLER, J., delivered the opinion of the Court, in which McCORMICK, P.J., and MEYERS, MANSFIELD, KELLER, PRICE, HOLLAND, and WOMACK, J.J., joined.

When Officer Carrol saw Billy Lee Walter commit a traffic violation, he pulled him over. Carrol checked Walter's license

a clear plastic wrapper with a green, leafy substance.

Miller told Carrol of his find. Carrol searched Walter for any additional drugs and found a large bag of cocaine in Walter's shirt pocket. Miller then allowed his dog to search the truck, and the dog alerted to a jacket lying on the seat of the truck. Carrol searched the jacket and found a brick of marijuana.

Walter testified differently. He testified that when he was pulled over for the traffic violation, Carrol performed a warrant check, and it came back clear. After that, Carrol asked Walter to get out of the truck. Walter got out and left the door open. When Walter refused consent to search the truck, the canine unit was called in, and Walter was patted down for weapons, at which point the cocaine was found in his shirt pocket. After the canine unit arrived, Walter's passenger was asked to get out of the truck. He did so, closing the door behind him. The dog then searched the truck, finding the brick of marijuana in the jacket.

## Procedural History

Walter was charged with possession of cocaine. He moved to suppress the drugs based on an illegal search, but the trial court denied the motion. Walter was found guilty by the trial court and sentenced to 10 years in prison.

On appeal, Walter argued that, although the initial stop of his truck for a traffic violation was valid, the continued detention violated the Fourth Amendment. The State responded that (1) the check for outstanding warrants was a reasonable detention during the traffic stop, and the marijuana was observed by Miller during the course of that detention; and (2) reasonable suspicion existed to justify the further detention for a canine search.

The Court of Appeals reversed Walter's conviction.[1] The Court held that, while detaining a person for a warrant check during a traffic stop does not violate the Fourth Amendment, calling for a canine unit in the meantime requires reasonable suspicion.[2] Since Carrol did not have a reasonable suspicion of drug activity at the time that he called in the canine unit, the Court held the search invalid.[3]

The State filed a petition for discretionary review, which we granted. The State asks whether an officer detaining an individual for a traffic stop and warrant check may seize suspected narcotics that he sees in plain view in the individual's vehicle. The State also asks whether an officer's subjective intent to conduct a search with a canine unit, when there is no reasonable suspicion for such a search, vitiates the officer's seizure of drugs in plain view.

## Standard of Review

 In reviewing a trial court's ruling on a motion to suppress, we give "almost total deference to a trial court's determination of historical facts" and review *de novo* the court's application of the law of search and seizure.[4] In this case, the trial court did not make explicit findings of historical fact, so we review the evidence in a light most favorable to the trial court's ruling.[5] Although Walter's testimony conflicted with Carrol's, the trial court denied the motion to suppress, implicitly finding Carrol credible. We therefore take Carrol's testimony as true.

## Legal Background

 The Fourth Amendment protects against unreasonable searches and sei-

1. *Walter v. State*, 997 S.W.2d 853, 863 (Tex. App.—Austin 1999).

2. *Id.* at 858.

3. *Id.* at 863.

4. *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997).

5. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000).

zures.[6] The capacity to claim the protection of the Fourth Amendment depends upon whether the person has a legitimate expectation of privacy in the invaded place.[7] While searches conducted without a warrant are *per se* unreasonable,[8] seizing contraband in plain view does not run afoul of the Fourth Amendment. The Supreme Court has explained that the "plain view" doctrine is not really an "exception" to the warrant requirement because the seizure of property in plain view involves no invasion of privacy and is presumptively reasonable.[9] If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy.[10] Simply put, "the State's intrusion into a particular area cannot result in a Fourth Amendment violation unless the area is one in which there is a constitutionally protected reasonable expectation of privacy." [11]

The criteria that guide a "plain view" analysis were set forth in *Coolidge v. New Hampshire*.[12] There, a plurality of the Supreme Court opined that the "plain view" doctrine had three requirements. First, the police officer must lawfully make the initial intrusion or otherwise properly be in a position from which he can view the contraband.[13] Second, the officer must discover the incriminating evidence "inadvertently," meaning he may not know in

advance the location of the evidence and intend to seize it, relying on the plain view doctrine only as a pretext.[14] Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure.[15] In *Horton*, the Supreme Court abandoned the inadvertance requirement, reasoning that it is better to look to objective standards of conduct rather than considering the subjective state of mind of the officer.[16]

■ In line with *Horton*, we have recently stated that the "plain view" doctrine requires only that: (1) law enforcement officials have a right to be where they are, and (2) it be immediately apparent that the item seized constitutes evidence, that is, there is probable cause to associate the item with criminal activity.[17] In determining whether the officer had a right to be where he was, the Supreme Court requires that "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." [18]

■ In *Minnesota v. Dickerson*, the Supreme Court elaborated on the notion of privacy as the rationale behind the "plain view" doctrine:

The rationale ... is that if contraband is left in open view and is observed by a

**6.** U.S. Const. Amend. IV; *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 473, 142 L.Ed.2d 373 (1998).

**7.** *Carter*, 525 U.S. at 88, 119 S.Ct. at 473; *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978).

**8.** *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

**9.** *Texas v. Brown*, 460 U.S. 730, 738–39, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983).

**10.** *Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112 (1990).

**11.** *New York v. Class*, 475 U.S. 106, 112, 106 S.Ct. 960, 965, 89 L.Ed.2d 81 (1986).

**12.** *Horton*, 496 U.S. at 134, 110 S.Ct. at 2306, citing *Coolidge*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

**13.** *Brown*, 460 U.S. at 737, 103 S.Ct. at 1540, citing *Coolidge*, 403 U.S. at 465–68, 91 S.Ct. at 2037–39.

**14.** *Id.* at 737, 103 S.Ct. at 1540, citing *Coolidge*, 403 U.S. at 470, 91 S.Ct. at 2040.

**15.** *Id.* at 737, 103 S.Ct. at 1540–41, citing *Coolidge*, 403 U.S. at 466, 91 S.Ct. at 2038.

**16.** *Horton*, 496 U.S. at 130, 138, 110 S.Ct. at 2304, 2308–09.

**17.** *Ramos v. State*, 934 S.W.2d 358, 365 (Tex. Crim.App.1996).

**18.** *Horton*, 496 U.S. at 136, 110 S.Ct. at 2308.

police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point. The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment.[19]

Significantly, a police officer's subjective motive will never invalidate objectively justifiable behavior under the Fourth Amendment.[20] Subjective intentions play no role in an ordinary, probable-cause Fourth Amendment analysis.[21]

■ As a general matter, the Supreme Court has recognized that the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.[22] And we have indicated that, during a routine traffic stop, an officer is permitted to detain the individual in order to check for outstanding warrants.[23]

Finally, the Supreme Court has held that exposing luggage to a trained canine does not constitute a "search" under the Fourth Amendment.[24] It remains unclear whether a canine sniff alone constitutes a detention, or whether calling in a canine unit requires reasonable suspicion. In *Place*, the Supreme Court concluded that the law regarding investigative detentions should apply when police seize an individual's luggage.[25] The Court did not decide whether a canine sniff in the absence of detaining luggage constituted an investigative detention requiring reasonable suspicion. Similarly, in *Crockett v. State*,[26] we found reasonable suspicion was lacking for a canine sniff and reversed the conviction. But there, the police detained the defendant for the purpose of conducting the canine sweep, so reasonable suspicion was required for the detention itself. In the instant case, Walter was detained due to the traffic violation and the warrant check. The canine search was not a cause of detention, so *Place* and *Crockett* are not necessarily determinative. Nevertheless, for purposes of this opinion, we will assume, as the parties do, that reasonable suspicion is required for a canine sniff.

## Application

■ Walter concedes that the initial traffic stop was valid, and the State concedes that there was no reasonable suspicion for Carrol to call in the canine unit. We will assume both these concessions to be true. So we are left with a very narrow question: whether an officer who observes narcotics in plain view, while a warrant check is pending in a routine traffic stop, violates the Fourth Amendment in seizing the drugs if he subjectively intends to conduct an unlawful canine sweep.

Walter argues that the only reason Miller even looked into the truck was to prepare for the unlawful canine sniff. Since Miller would not have been at the scene at all but for Carrol's request, and Carrol's request was not supported by reasonable suspicion, anything Miller observed must be suppressed.

19. *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993).

20. *See Whren v. United States*, 517 U.S. 806, 812, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996).

21. *Id.* at 813, 116 S.Ct. at 1774.

22. *Id.* at 810, 116 S.Ct.at 1772.

23. *Davis v. State*, 947 S.W.2d 240, 245 n. 6 (Tex.Crim.App.1997).

24. *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983).

25. *Id.* at 708–09, 103 S.Ct. at 2645.

26. 803 S.W.2d 308 (Tex.Crim.App.1991).

■ We believe Walter misconstrues the plain view doctrine and, significantly, he cites no supporting law. Under Walter's analysis, we would have to look at the subjective reasons for Miller being at the scene and looking into the vehicle. While application of the plain view doctrine assumes that the officer had a right to be where he was, determining whether the officer violated the Fourth Amendment in arriving at that location is based on an objective standard, not a subjective one.

This case is similar to *Whren v. United States*.[27] There, officers were patrolling a "high drug area" when they noticed the defendant commit a traffic violation. They pulled the vehicle over and, when they approached it, they immediately noticed two large plastic bags of cocaine in the defendant's hands. The defendant argued the officers' asserted reason for approaching the vehicle—to issue a traffic warning—was pretextual, and in fact the officers were hoping to find drugs. As a result, the defendant argued, the stop was illegal, and any drugs subsequently found had to be suppressed.

The Supreme Court disagreed. The Court rejected the defendant's argument "that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of law has occurred."[28] The Court noted that it had "never held ... that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment."[29] Indeed, the Court noted, it had "repeatedly held and asserted the contrary."[30] The Court reiterated that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."[31]

In *Whren*, by looking at the officers' reasons for making the stop, rather than the fact that the defendant had committed a traffic violation, the defendant was employing a subjective test. The Court made clear that the traffic violation itself constituted an objectively reasonable basis for the stop, so any ulterior motive on the part of the officers was irrelevant.

We, too, rejected the notion of pretext stops in *Garcia v. State*.[32] We explained that the phrase "pretext arrest" was used to refer to an "objectively" valid stop for an allegedly improper reason.[33] In line with Supreme Court and federal authority, we abandoned the "pretext arrest" concept in favor of a purely objective analysis. We held that, "as long as an actual violation occurs, law enforcement officials are free to enforce the laws and detain a person for that violation ... regardless of the officer's subjective reasons for the detention."[34]

The instant case is different because Walter does not argue that the stop was pretextual. Nevertheless, like the defendants in *Whren* and *Garcia*, Walter would have us look to Miller's subjective reasoning—in particular, his reasons for being at the scene and looking into the vehicle. But as the Supreme Court has said, we must allow "subjective intentions [to] play no role in ... [our] analysis."[35]

Miller's act of standing outside the vehicle and looking into it is similar to the officer's actions in *Brown*.[36] There, the defendant was stopped at a routine driver's license checkpoint. During the stop, the police officer shined a flashlight into the defendant's vehicle and repositioned

**27.** 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89.

**28.** *Id.* at 811, 116 S.Ct. at 1773.

**29.** *Id.* at 812, 116 S.Ct. at 1774.

**30.** *Ibid.*

**31.** *Id.* at 813, 116 S.Ct. at 1774.

**32.** 827 S.W.2d 937 (Tex.Crim.App.1992).

**33.** *Id.* at 939–40.

**34.** *Id.* at 944.

**35.** *Whren*, 517 U.S. at 813, 116 S.Ct. at 1774.

**36.** 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502.

himself in order to get a better view of the glove compartment. In doing so, he saw in plain view a small knotted balloon in the defendant's hands, which he knew from experience was a common method of packaging narcotics. He also saw plastic vials, some white powder, and an open bag of balloons in the glove box.

The Supreme Court held that the officer lawfully observed the items in plain view. In reaching that holding, the Court explained that the defendant had no privacy interest in the interior of his vehicle:

> The general public could peer into the interior of [the defendant's] automobile from any number of angles; there is no reason [the police officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen. There is no legitimate expectation of privacy ... shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. In short, the conduct that enabled [the officer] to observe the interior of [the defendant's] car and of his open glove compartment was not a search within the meaning of the Fourth Amendment.[37]

Viewing the facts of this case objectively, as we must, we discern no Fourth Amendment violation. At the time that Miller saw the marijuana, he was standing on park property, looking into a vehicle whose doors were wide open. Miller had every right to be standing where he was at the time he observed the drugs, just like any private citizen or any other police officer would have been permitted to stand there. This is true regardless of the fact that Miller's subjective intent was to conduct a canine sweep of the vehicle. Miller's act of standing outside of the vehicle and looking into it did not violate any privacy interest of Walter's.

**37.** *Id.* at 740, 103 S.Ct. at 1542 (citations omitted).

## Conclusion

Carrol legally detained Walter for a traffic violation. During this valid detention, Miller looked in the truck and, in plain view, he saw a bag that he suspected contained marijuana. The seizure of this contraband did not violate the Fourth Amendment.

## Judgment

We reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court.

MEYERS, J., delivered a concurring opinion.

JOHNSON, J., concurred in the result.

MEYERS, J., delivered this concurring opinion.

The Court of Appeals conceded the initial stop of appellant's vehicle pursuant to a traffic violation was valid because the officer had "an objective basis for stopping the truck." *Walter v. State*, 997 S.W.2d 853, 857 (Tex.App.-Austin 1999). The Court of Appeals also agreed that further detention of appellant pursuant to that violation was valid as well. *Id.* But the Court of Appeals concluded that the officer needed an additional reason, "other than the initial traffic violation, to continue to detain appellant and call for the canine sweep." *Id.*

The Court of Appeals erred in considering the officer's level of suspicion in calling for the canine sweep. The fact that the officer called for the canine search before he had the requisite level of suspicion does not invalidate the later canine search, which was by then conducted with probable cause based upon the marijuana that had been validly seized pursuant to plain view. The initial stop was valid. Continued detention during the warrant check was valid. Regardless of whether the officer was justified in calling for a canine search during the stop, the officer had an

objective basis to be where he was when he observed the marijuana in plain view. The seizure of the marijuana was proper, giving the officer probable cause to search appellant and the rest of the truck.

With these comments, I join the opinion of the Court.