NO. 07-01-0339-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 29, 2004

_____

RANDY MACK LACKEY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 287TH DISTRICT COURT OF BAILEY COUNTY;

NO. 2032; HONORABLE JACK D. YOUNG, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Appellant Randy Mack Lackey challenges the denial of a motion to suppress evidence seized during execution of a search warrant and used in his prosecution for theft. Disagreeing that reversal is required, we affirm.

On May 5, 2000, officers of the Muleshoe Police Department, prompted by information from a local bank, began an investigation concerning forgery of stolen checks.

Muleshoe police contacted the payee on one check, AG Van & Truck Equipment in Arlington, Texas. AG employee Richard Ford told officers he received the check, drawn on the account of Marc Bates, in payment for an 8000 pound winch and a brake controller. He sold the items to a customer who identified himself as Marc Bates. The transaction made Ford suspicious because he had sold another winch to the same person four days earlier, when he paid with a check drawn on the account of O. M. Lackey. Because of his suspicion, Ford noted the license plate number of the customer's pickup. He gave the number to police.

Muleshoe Police Chief Don L. Carter checked the registration for the license plate number provided by Ford and determined it belonged to appellant at 1003 W. 6th Street in Muleshoe. The bank informed police of a second check on the same account written to another Arlington business, The Racing Zone. An employee of that business told Chief Carter of two orders received in the name of Marc Bates. The first order, placed March 30, 2000, was for two MSD ignition components, which were shipped to the U.P.S. office in Lubbock. The items were paid for by a check drawn on Bates' account in the Muleshoe bank. The Racing Zone shipped the second order with the restriction that it be paid for by cashier's check. That shipment was refused.

On May 6, Chief Carter made an affidavit seeking a warrant to search the premises at appellant's address. The affidavit set out most of the facts above[1] and sought permission to search for and seize "[c]hecks on the Muleshoe State Bank account of Marc

---

[1]Some details have been drawn from testimony at the hearing on appellant's motion to suppress.

Bates, receipts of purchases made with checks on the account of Marc Bates, two 8000 lb. w[i]nches, one brake controller, and two MSD ignition parts number 6420." Justice of the Peace Todd Ellis signed a warrant the same day, authorizing the search for the items listed in Carter's affidavit.

Carter and other Muleshoe police officers, together with Louis Cardinal of the Department of Public Safety and Douglas Clements of the South Plains Auto Theft Task Force in Lubbock, executed the search warrant and an arrest warrant for appellant at approximately 10:30 that night. The return on the search warrant contained an inventory showing the officers seized one book of checks in the name of Marc Bates with three checks missing, a wallet containing the checks, two packing lists from AG Van & Truck Equipment, a receipt from The Racing Zone, two REP 8000H winches, one Pro 8000R winch, and one "jack box w/ MSD distributor." The officers also seized the following items not listed in the warrant: a "gold preferred card Sara B Bontke Arlington Sewing Machine," 10 blank checks with the name Chad Black, one check for $2,150 in the name of Chad Black, a Caterpillar forklift, a Caterpillar VIN plate, a VIN plate with the number CCS246J123228, two tool boxes with tools, three die stamping tools, a black tandem trailer, a wrecked pickup, and "left door VIN # removed." While executing the search warrant officers also found envelopes addressed to appellant from storage facilities in Lubbock and Dallas and photographs of a Chevrolet Chevelle with license plate JSX685.

On May 10, 2000, Chief Carter signed an affidavit seeking a second search warrant. It recited several events as indicating that additional evidence and stolen property would be found at appellant's home. Carter stated officers had contacted Sara Bontke in

Mansfield, Texas. Through her they learned the Mansfield Police Department was investigating theft of items including a credit card issued to Bontke, a 1966 Chevrolet Chevelle, a 1982 GMC pickup, a blue car trailer, and three firearms. The Chevelle was the same vehicle shown in the photograph found in appellant's home. The affidavit stated that a Mansfield police officer had contacted the Dallas storage facility and learned appellant had rented two outside storage spaces. He found two stolen trailers in those spaces. Officers from several agencies had executed a search warrant in Lubbock and discovered two 1966 Chevrolet Chevelles, a blue tandem axle trailer, and a 1982 GMC pickup. Carter's May 10 affidavit sought a warrant authorizing seizure of a variety of engine parts, a Miller welder, the firearms reported stolen in Mansfield and the Chevelle photograph observed during the May 6 search. District Judge Felix Klein issued a warrant for the items listed in Carter's affidavit and it was executed the same day. The inventory of property seized in the second search included 222 items. The welder and firearms were not recovered. Carter and Cardinal later recovered the Miller welder from another house in Muleshoe where the residents said they purchased the welder from appellant.

Appellant was indicted for theft of the forklift and black trailer seized May 6, and the welder. The indictment also alleged the thefts were committed pursuant to a continuing course of conduct for the purpose of aggregating the values of the property. The aggregate value alleged was $20,000 or more but less than $100,000. The indictment also contained an enhancement paragraph alleging two prior felony convictions.

Appellant filed motions to suppress evidence obtained during, or as a result of, the May 6 and May 10 searches. Following a hearing, the trial court denied the motions as to

both searches. Appellant plead not guilty but was found guilty by a jury which assessed punishment at 25 years confinement and a $5,000 fine. He now presents two issues on appeal. The first assigns error to the denial of his motion to suppress evidence obtained as a result of the May 6 search warrant because, appellant contends, that warrant was invalid. Appellant's second issue assigns error to denial of his motion to suppress evidence of the trailer and forklift obtained as a result of the May 6 search. The State argues the forklift and trailer were properly seized under the plain view doctrine. Appellant challenges application of the plain view doctrine by contesting the evidence supporting a finding of probable cause to believe the forklift and trailer were stolen. Finding the issues interrelated, we will discuss them together.

Appellant presents two arguments in support of his first issue. He first argues that the May 6 search warrant was an evidentiary warrant authorized only under Article 18.02(10) of the Code of Criminal Procedure,[2] and that the record does not show the justice of the peace who issued it was authorized to do so, *see* Tex. Code Crim. Proc. Art. 18.01(c), (i), 18.02(10) (Vernon Supp. 2004). The State contends that the warrant was not a mere evidence warrant and the items described also fell under other provisions of Article 18.02, including 18.02(1) as property acquired by theft. We agree. Although the warrant was referred to as evidentiary during testimony at the suppression hearing, Chief Carter's search warrant affidavit contains the assertion that items purchased with a forged check will be located at appellant's address. The search warrant was not grounded only on Article

---

[2]Unless otherwise noted, references to Articles are to the Texas Code of Criminal Procedure (Vernon Supp. 2004).

18.02(10). *See State v. Young*, 8 S.W.3d 695, 698 (Tex.App.–Fort Worth 1999, no pet.) (classification of warrant under Article 18.02 an issue of law for the court).

Moreover, Chief Carter's testimony at the suppression hearing listed the magistrates serving Bailey County at the time. He testified that Judge Gordon Green was the district judge, and that other magistrates serving included the county judge, two justices of the peace and a municipal judge, of whom only Judge Green was a lawyer. Taking judicial notice that Judge Green's jurisdiction in the 287th District also includes Parmer County, it would appear that the requirements of Article 18.01(i) were met and the issuance of the search warrant under Article 18.02(10) by a non-lawyer magistrate was authorized.

Appellant secondly argues that even if the warrant were valid, the seizure of the forklift and tandem trailer was illegal because the items were not specifically described in the warrant. He relies on *State v. Wood*, 828 S.W.2d 471 (Tex.App.–El Paso 1992, no pet.).

With exceptions, Penal Code Section 31.11 makes it an offense knowingly to possess, *inter alia*, tangible personal property on which the serial number or other permanent identification marking has been removed, altered or obliterated. Tex. Pen. Code Ann. § 31.11(a) (Vernon 2003). Section 31.11 applies to vehicles. *Id*. § 31.11(e); *Boudreaux v. State*, 24 S.W.3d 503 (Tex.App.–Texarkana 2000, no pet.). An item of tangible personal property from which the serial number or similar marking has been removed is thus, for want of a better term, contraband. Section 31.11(c) provides a statutory authorization for the treatment of such property as stolen property, for purposes

of its custody and disposition. Subchapter H of the Certificate of Title Act, Texas Transportation Code Ann. §§ 501.151 *et seq.* (Vernon 1999), criminalizes certain actions related to the identity of vehicles. Section 501.158 of that Subchapter contains provisions similar to those of Penal Code Section 31.11(c), authorizing the seizure of a vehicle without a warrant if probable cause exists to believe that the vehicle has had the serial number removed, altered or obliterated, and authorizing a vehicle so seized to be treated as stolen property for purposes of custody and disposition. Regardless whether the forklift and trailer are vehicles subject to the Certificate of Title Act or are simply items of tangible personal property subject only to Penal Code Section 31.11, if the officers had probable cause to believe that their serial numbers or similar markings had been removed, altered or obliterated, the two items were subject to seizure, not because they were evidence of appellant's involvement in a crime but because they were to be treated as stolen property.

*Wood* is thus to be distinguished. In that case, it was undisputed that the search warrant was an evidentiary warrant, issued only on the authority of Article 18.02(10). 828 S.W.2d at 472. The trial court suppressed items of evidence seized during the search but not listed in the warrant, entering a finding of fact that all the items seized constituted "mere evidence." *Id*. at 473 n. 4. Affirming the suppression, the appeals court noted that the State had introduced no evidence to support the seizure. *Id*. at 475. Here, the search warrant was not based only on Article 18.02(10). And, even if the May 6 search warrant is viewed as a mere evidence warrant issued under Article 18.02(10), seizure of the forklift and trailer still would be authorized since they were not merely evidence but "fruits, instrumentalities or contraband," the seizure of which is not limited to items listed in an evidentiary warrant.

*See Young*, 8 S.W.3d at 699; *Reeves v. State*, 969 S.W.2d 471, 483 n. 10, 485 (Tex.App.–Waco 1998, pet ref'd).[3]

Even so, appellant contends that the seizure of the forklift and trailer resulted from an illegal search. The State argues the plain view doctrine. Appellant contends the plain view doctrine cannot justify the officers' seizure of the items. He argues the scope of the May 6 search warrant was limited to the items listed in it, none of which officers had reason to believe would be found on or near the forklift or tandem trailer. He also emphasizes the testimony of officer Cardinal, who testified that his job during the search "was to stay outside and check the vehicles and trailers." He concludes that the intent of the officers' actions in examining the forklift and trailer was outside the legitimate scope of the search warrant, resulting in an unlawful search.

The Court of Criminal Appeals recently discussed the plain view doctrine in *Walter v. State*, 28 S.W.3d 538, 541 (Tex.Crim.App. 2000). Discussion of the doctrine begins with the fundamental principle that the Fourth Amendment protects against unreasonable searches and seizures. *Id.* at 541 (citing *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 473, 142 L.Ed.2d 373 (1998)). Article I, Section 9 of the Texas Constitution likewise

---

[3]Our conclusion makes it unnecessary to consider the State's further contention that seizure of the forklift and trailer were evidence reasonably related to the offense being investigated, discovered in the course of a good faith search conducted within the parameters of the search warrant, and thus admissible under the authority of such cases as *Reeves*, 969 S.W.2d at 485, and *Bower v. State*, 769 S.W.2d 887, 897 (Tex.Crim.App. 1989), *overruled on other grounds*, *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991).

protects against unreasonable searches and seizures.[4]  While searches conducted without a warrant are presumptively unreasonable,  *Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)*, citing Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967), seizing contraband found in plain view does not run afoul of the Fourth Amendment.  The Supreme Court has explained that the "plain view" doctrine is not really an "exception" to the warrant requirement because the seizure of property in plain view involves no invasion of privacy. *Texas v. Brown*, 460 U.S. 730, 738-39, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983).  If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. *Walter*, 28 S.W.3d at 541; *see Horton*, 496 U.S. at 133.

The plain view doctrine requires, first, that the officer have a right to be at the place from which the item seized could be plainly viewed, and secondly, that it be immediately apparent that the item constitutes evidence.  *Walter*, 28 S.W.3d at 541.  The undisputed evidence is that the forklift was parked in front of the garage at appellant's residence and that the trailer was parked in the street.  On this evidence the holdings in *Walter* and *Horton* are dispositive of appellant's complaints that officers Cardinal and Clements knowingly exceeded the scope of the search warrant by testifying they were present to look for stolen vehicles when no vehicles were listed in the warrant.  Cardinal testified that they were assigned to remain outside the house while the search warrant was executed.  He stated

---

[4]Appellant refers to Article 1, Section 9 of the Texas Constitution, but does not contend it provides greater protection from unreasonable searches and seizure than the United States Constitution, so we do not address the application of our state constitution. *Brown v. State*, 943 S.W.2d 35, 36 n. 3 (Tex.Crim.App. 1997).

that he walked past the forklift when he arrived at the residence. Clements testified that his part was to assist with the search of the garage area, and he observed the forklift sitting in front of the garage. As noted, the trailer was in the street. Because the officers had a right to be where they were when they observed the forklift and trailer, their conduct in approaching and looking at the trailer and forklift did not involve any invasion of appellant's privacy. *Walter*, 28 S.W.3d at 541. Nor is their motive in doing so a consideration in this analysis. *Id*. at 542. The first element of the plain view doctrine was satisfied.

Restated, the second element of the plain view doctrine requires that it be immediately apparent to officers that the item seized constitutes evidence (or, in our case, contraband), that is, there is probable cause to associate the item with criminal activity. *Walter*, 28 S.W.3d at 541; *see Horton*, 496 U.S. at 130. With regard to the forklift, the evidence supports a finding that the status of the forklift as property to be treated as stolen was immediately apparent to the officers. Officer Clements testified the identification plate had been removed from the forklift, that the plate was "fairly large" and it was "fairly easy to tell that [it was missing] when you walk past that forklift."

The evidence also supports a finding of probable cause to treat the trailer as stolen, under the cited statutory provisions. Chief Carter testified they seized the trailer because "when it was examined, the VIN on it had been removed and there was [sic] obvious ground marks on the tongue which indicated removal, possible removal, of a number." When asked if he determined the number was missing from a "casual glance," he responded "not from a casual glance, no," and agreed that it would take "a pretty close visual observation" to determine if the number had been removed. Clements testified "a

person could see the grinder marks on the trailer probably without the assistance of a flashlight, but I'm sure we shined a flashlight on it also."[5]

Appellant cites testimony of Chief Carter as evidence that he had no reason to believe the forklift or trailer were stolen property. Carter also testified he knew nothing about the trailer or forklift at the time he executed the May 6 affidavit seeking a search warrant. Those facts are irrelevant to the question whether the plain view doctrine was applicable at the time the officers seized the forklift and trailer. Likewise, testimony that officers did not identify the number on the trailer until after it was seized does not weigh against finding the second element of the plain view doctrine. The officers' discovery of grinder marks in the area where identifying numbers are, in their experience, ordinarily placed was sufficient to make it immediately apparent that the trailer was probably associated with a crime. Tex. Pen. Code Ann. § 31.11(c). The evidence supports a finding that the items were admissible under the plain view doctrine.

Appellant's reliance on *State v. Bassano*, 827 S.W.2d 557 (Tex.App.–Corpus Christi 1992, pet. ref'd), is misplaced because that case did not involve the plain view doctrine. In *Bassano* officers had a warrant authorizing a search of Bassano's house. *Id.* at 558. When they executed the warrant, they also searched his wife's car which was located in the driveway, and there they found contraband. *Id.* at 558-59. The distinction is that officers in *Bassano* intruded on a protected place before finding the contraband. Therefore

---

[5]That the light from a flashlight may have been necessary to enable the officers to see the grind marks in the dark does not render the plain view doctrine inapplicable under these circumstances.

the State in *Bassano* could not establish the first element of the plain view doctrine.  Here, both the forklift panel and the tongue of the trailer were visible without requiring any intrusion into a place where appellant had a reasonable expectation of privacy.

Appellant's issues are overruled, and the judgment is affirmed.


James T. Campbell
Justice


Do not publish.