NO. 07-01-0339-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 29, 2004



______________________________




RANDY MACK LACKEY, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 287TH DISTRICT COURT OF BAILEY COUNTY;



NO. 2032; HONORABLE JACK D. YOUNG, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Appellant Randy Mack Lackey challenges the denial of a motion to suppress
evidence seized during execution of a search warrant and used in his prosecution for theft.
Disagreeing that reversal is required, we affirm.

 On May 5, 2000, officers of the Muleshoe Police Department, prompted by
information from a local bank, began an investigation concerning forgery of stolen checks. 
Muleshoe police contacted the payee on one check, AG Van & Truck Equipment in
Arlington, Texas. AG employee Richard Ford told officers he received the check, drawn on
the account of Marc Bates, in payment for an 8000 pound winch and a brake controller. He
sold the items to a customer who identified himself as Marc Bates. The transaction made
Ford suspicious because he had sold another winch to the same person four days earlier,
when he paid with a check drawn on the account of O. M. Lackey. Because of his
suspicion, Ford noted the license plate number of the customer's pickup. He gave the
number to police.

 Muleshoe Police Chief Don L. Carter checked the registration for the license plate
number provided by Ford and determined it belonged to appellant at 1003 W. 6th Street in
Muleshoe. The bank informed police of a second check on the same account written to
another Arlington business, The Racing Zone. An employee of that business told Chief
Carter of two orders received in the name of Marc Bates. The first order, placed March 30,
2000, was for two MSD ignition components, which were shipped to the U.P.S. office in
Lubbock. The items were paid for by a check drawn on Bates' account in the Muleshoe
bank. The Racing Zone shipped the second order with the restriction that it be paid for by
cashier's check. That shipment was refused.

 On May 6, Chief Carter made an affidavit seeking a warrant to search the premises
at appellant's address. The affidavit set out most of the facts above (1) and sought
permission to search for and seize "[c]hecks on the Muleshoe State Bank account of Marc
Bates, receipts of purchases made with checks on the account of Marc Bates, two 8000
lb. w[i]nches, one brake controller, and two MSD ignition parts number 6420." Justice of the
Peace Todd Ellis signed a warrant the same day, authorizing the search for the items listed
in Carter's affidavit.

 Carter and other Muleshoe police officers, together with Louis Cardinal of the
Department of Public Safety and Douglas Clements of the South Plains Auto Theft Task
Force in Lubbock, executed the search warrant and an arrest warrant for appellant at
approximately 10:30 that night. The return on the search warrant contained an inventory
showing the officers seized one book of checks in the name of Marc Bates with three
checks missing, a wallet containing the checks, two packing lists from AG Van & Truck
Equipment, a receipt from The Racing Zone, two REP 8000H winches, one Pro 8000R
winch, and one "jack box w/ MSD distributor." The officers also seized the following items
not listed in the warrant: a "gold preferred card Sara B Bontke Arlington Sewing Machine,"
10 blank checks with the name Chad Black, one check for $2,150 in the name of Chad
Black, a Caterpillar forklift, a Caterpillar VIN plate, a VIN plate with the number
CCS246J123228, two tool boxes with tools, three die stamping tools, a black tandem
trailer, a wrecked pickup, and "left door VIN # removed." While executing the search
warrant officers also found envelopes addressed to appellant from storage facilities in
Lubbock and Dallas and photographs of a Chevrolet Chevelle with license plate JSX685. 

 On May 10, 2000, Chief Carter signed an affidavit seeking a second search warrant. 
It recited several events as indicating that additional evidence and stolen property would
be found at appellant's home. Carter stated officers had contacted Sara Bontke in
Mansfield, Texas. Through her they learned the Mansfield Police Department was
investigating theft of items including a credit card issued to Bontke, a 1966 Chevrolet
Chevelle, a 1982 GMC pickup, a blue car trailer, and three firearms. The Chevelle was the
same vehicle shown in the photograph found in appellant's home. The affidavit stated that
a Mansfield police officer had contacted the Dallas storage facility and learned appellant
had rented two outside storage spaces. He found two stolen trailers in those spaces. 
Officers from several agencies had executed a search warrant in Lubbock and discovered
two 1966 Chevrolet Chevelles, a blue tandem axle trailer, and a 1982 GMC pickup. Carter's
May 10 affidavit sought a warrant authorizing seizure of a variety of engine parts, a Miller
welder, the firearms reported stolen in Mansfield and the Chevelle photograph observed
during the May 6 search. District Judge Felix Klein issued a warrant for the items listed in
Carter's affidavit and it was executed the same day. The inventory of property seized in
the second search included 222 items. The welder and firearms were not recovered. 
Carter and Cardinal later recovered the Miller welder from another house in Muleshoe
where the residents said they purchased the welder from appellant. 

 Appellant was indicted for theft of the forklift and black trailer seized May 6, and the
welder. The indictment also alleged the thefts were committed pursuant to a continuing
course of conduct for the purpose of aggregating the values of the property. The aggregate
value alleged was $20,000 or more but less than $100,000. The indictment also contained
an enhancement paragraph alleging two prior felony convictions.

 Appellant filed motions to suppress evidence obtained during, or as a result of, the
May 6 and May 10 searches. Following a hearing, the trial court denied the motions as to
both searches. Appellant plead not guilty but was found guilty by a jury which assessed
punishment at 25 years confinement and a $5,000 fine. He now presents two issues on
appeal. The first assigns error to the denial of his motion to suppress evidence obtained
as a result of the May 6 search warrant because, appellant contends, that warrant was
invalid. Appellant's second issue assigns error to denial of his motion to suppress evidence
of the trailer and forklift obtained as a result of the May 6 search. The State argues the
forklift and trailer were properly seized under the plain view doctrine. Appellant challenges
application of the plain view doctrine by contesting the evidence supporting a finding of
probable cause to believe the forklift and trailer were stolen. Finding the issues
interrelated, we will discuss them together. 

 Appellant presents two arguments in support of his first issue. He first argues that
the May 6 search warrant was an evidentiary warrant authorized only under Article
18.02(10) of the Code of Criminal Procedure, (2) and that the record does not show the justice
of the peace who issued it was authorized to do so, see Tex. Code Crim. Proc. Art.
18.01(c), (i), 18.02(10) (Vernon Supp. 2004). The State contends that the warrant was not
a mere evidence warrant and the items described also fell under other provisions of Article
18.02, including 18.02(1) as property acquired by theft. We agree. Although the warrant
was referred to as evidentiary during testimony at the suppression hearing, Chief Carter's
search warrant affidavit contains the assertion that items purchased with a forged check
will be located at appellant's address. The search warrant was not grounded only on Article
18.02(10). See State v. Young, 8 S.W.3d 695, 698 (Tex.App.-Fort Worth 1999, no pet.)
(classification of warrant under Article 18.02 an issue of law for the court). 

 Moreover, Chief Carter's testimony at the suppression hearing listed the magistrates
serving Bailey County at the time. He testified that Judge Gordon Green was the district
judge, and that other magistrates serving included the county judge, two justices of the
peace and a municipal judge, of whom only Judge Green was a lawyer. Taking judicial
notice that Judge Green's jurisdiction in the 287th District also includes Parmer County, it
would appear that the requirements of Article 18.01(i) were met and the issuance of the
search warrant under Article 18.02(10) by a non-lawyer magistrate was authorized. 

 Appellant secondly argues that even if the warrant were valid, the seizure of the
forklift and tandem trailer was illegal because the items were not specifically described in
the warrant. He relies on State v. Wood, 828 S.W.2d 471 (Tex.App.-El Paso 1992, no
pet.). 

 With exceptions, Penal Code Section 31.11 makes it an offense knowingly to
possess, inter alia, tangible personal property on which the serial number or other
permanent identification marking has been removed, altered or obliterated. Tex. Pen. Code
Ann. § 31.11(a) (Vernon 2003). Section 31.11 applies to vehicles. Id. § 31.11(e);
Boudreaux v. State, 24 S.W.3d 503 (Tex.App.-Texarkana 2000, no pet.). An item of
tangible personal property from which the serial number or similar marking has been
removed is thus, for want of a better term, contraband. Section 31.11(c) provides a
statutory authorization for the treatment of such property as stolen property, for purposes
of its custody and disposition. Subchapter H of the Certificate of Title Act, Texas
Transportation Code Ann. §§ 501.151 et seq. (Vernon 1999), criminalizes certain actions
related to the identity of vehicles. Section 501.158 of that Subchapter contains provisions
similar to those of Penal Code Section 31.11(c), authorizing the seizure of a vehicle without
a warrant if probable cause exists to believe that the vehicle has had the serial number
removed, altered or obliterated, and authorizing a vehicle so seized to be treated as stolen
property for purposes of custody and disposition. Regardless whether the forklift and trailer
are vehicles subject to the Certificate of Title Act or are simply items of tangible personal
property subject only to Penal Code Section 31.11, if the officers had probable cause to
believe that their serial numbers or similar markings had been removed, altered or
obliterated, the two items were subject to seizure, not because they were evidence of
appellant's involvement in a crime but because they were to be treated as stolen property.

 Wood is thus to be distinguished. In that case, it was undisputed that the search
warrant was an evidentiary warrant, issued only on the authority of Article 18.02(10). 828
S.W.2d at 472. The trial court suppressed items of evidence seized during the search but
not listed in the warrant, entering a finding of fact that all the items seized constituted "mere
evidence." Id. at 473 n. 4. Affirming the suppression, the appeals court noted that the State
had introduced no evidence to support the seizure. Id. at 475. Here, the search warrant
was not based only on Article 18.02(10). And, even if the May 6 search warrant is viewed
as a mere evidence warrant issued under Article 18.02(10), seizure of the forklift and trailer
still would be authorized since they were not merely evidence but "fruits, instrumentalities
or contraband," the seizure of which is not limited to items listed in an evidentiary warrant. 
See Young, 8 S.W.3d at 699; Reeves v. State, 969 S.W.2d 471, 483 n. 10, 485
(Tex.App.-Waco 1998, pet ref'd). (3) 

 Even so, appellant contends that the seizure of the forklift and trailer resulted from
an illegal search. The State argues the plain view doctrine. Appellant contends the plain
view doctrine cannot justify the officers' seizure of the items. He argues the scope of the
May 6 search warrant was limited to the items listed in it, none of which officers had reason
to believe would be found on or near the forklift or tandem trailer. He also emphasizes the
testimony of officer Cardinal, who testified that his job during the search "was to stay
outside and check the vehicles and trailers." He concludes that the intent of the officers'
actions in examining the forklift and trailer was outside the legitimate scope of the search
warrant, resulting in an unlawful search.

 The Court of Criminal Appeals recently discussed the plain view doctrine in Walter
v. State, 28 S.W.3d 538, 541 (Tex.Crim.App. 2000). Discussion of the doctrine begins with
the fundamental principle that the Fourth Amendment protects against unreasonable
searches and seizures. Id. at 541 (citing Minnesota v. Carter, 525 U.S. 83, 88, 119 S.Ct.
469, 473, 142 L.Ed.2d 373 (1998)). Article I, Section 9 of the Texas Constitution likewise
protects against unreasonable searches and seizures. (4) While searches conducted without
a warrant are presumptively unreasonable, Horton v. California, 496 U.S. 128, 133, 110
S.Ct. 2301, 110 L.Ed.2d 112 (1990), citing Katz v. United States, 389 U.S. 347, 357, 88
S.Ct. 507, 514, 19 L.Ed.2d 576 (1967), seizing contraband found in plain view does not run
afoul of the Fourth Amendment. The Supreme Court has explained that the "plain view"
doctrine is not really an "exception" to the warrant requirement because the seizure of
property in plain view involves no invasion of privacy. Texas v. Brown, 460 U.S. 730,
738-39, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983). If an article is already in plain view,
neither its observation nor its seizure would involve any invasion of privacy. Walter, 28
S.W.3d at 541; see Horton, 496 U.S. at 133.

 The plain view doctrine requires, first, that the officer have a right to be at the place
from which the item seized could be plainly viewed, and secondly, that it be immediately
apparent that the item constitutes evidence. Walter, 28 S.W.3d at 541. The undisputed
evidence is that the forklift was parked in front of the garage at appellant's residence and
that the trailer was parked in the street. On this evidence the holdings in Walter and Horton
are dispositive of appellant's complaints that officers Cardinal and Clements knowingly
exceeded the scope of the search warrant by testifying they were present to look for stolen
vehicles when no vehicles were listed in the warrant. Cardinal testified that they were
assigned to remain outside the house while the search warrant was executed. He stated
that he walked past the forklift when he arrived at the residence. Clements testified that his
part was to assist with the search of the garage area, and he observed the forklift sitting in
front of the garage. As noted, the trailer was in the street. Because the officers had a right
to be where they were when they observed the forklift and trailer, their conduct in
approaching and looking at the trailer and forklift did not involve any invasion of appellant's
privacy. Walter, 28 S.W.3d at 541. Nor is their motive in doing so a consideration in this
analysis. Id. at 542. The first element of the plain view doctrine was satisfied.

 Restated, the second element of the plain view doctrine requires that it be
immediately apparent to officers that the item seized constitutes evidence (or, in our case,
contraband), that is, there is probable cause to associate the item with criminal activity. 
Walter, 28 S.W.3d at 541; see Horton, 496 U.S. at 130. With regard to the forklift, the
evidence supports a finding that the status of the forklift as property to be treated as stolen
was immediately apparent to the officers. Officer Clements testified the identification plate
had been removed from the forklift, that the plate was "fairly large" and it was "fairly easy
to tell that [it was missing] when you walk past that forklift." 

 The evidence also supports a finding of probable cause to treat the trailer as stolen,
under the cited statutory provisions. Chief Carter testified they seized the trailer because
"when it was examined, the VIN on it had been removed and there was [sic] obvious
ground marks on the tongue which indicated removal, possible removal, of a number." 
When asked if he determined the number was missing from a "casual glance," he
responded "not from a casual glance, no," and agreed that it would take "a pretty close
visual observation" to determine if the number had been removed. Clements testified "a
person could see the grinder marks on the trailer probably without the assistance of a
flashlight, but I'm sure we shined a flashlight on it also." (5) 

 Appellant cites testimony of Chief Carter as evidence that he had no reason to
believe the forklift or trailer were stolen property. Carter also testified he knew nothing
about the trailer or forklift at the time he executed the May 6 affidavit seeking a search
warrant. Those facts are irrelevant to the question whether the plain view doctrine was
applicable at the time the officers seized the forklift and trailer. Likewise, testimony that
officers did not identify the number on the trailer until after it was seized does not weigh
against finding the second element of the plain view doctrine. The officers' discovery of
grinder marks in the area where identifying numbers are, in their experience, ordinarily
placed was sufficient to make it immediately apparent that the trailer was probably
associated with a crime. Tex. Pen. Code Ann. § 31.11(c). The evidence supports a finding
that the items were admissible under the plain view doctrine. 

 Appellant's reliance on State v. Bassano, 827 S.W.2d 557 (Tex.App.-Corpus Christi
1992, pet. ref'd), is misplaced because that case did not involve the plain view doctrine. 
In Bassano officers had a warrant authorizing a search of Bassano's house. Id. at 558. 
When they executed the warrant, they also searched his wife's car which was located in
the driveway, and there they found contraband. Id. at 558-59. The distinction is that
officers in Bassano intruded on a protected place before finding the contraband. Therefore
the State in Bassano could not establish the first element of the plain view doctrine. Here,
both the forklift panel and the tongue of the trailer were visible without requiring any
intrusion into a place where appellant had a reasonable expectation of privacy. 

 Appellant's issues are overruled, and the judgment is affirmed.


 James T. Campbell

 Justice



Do not publish.

1. Some details have been drawn from testimony at the hearing on appellant's motion
to suppress.
2. Unless otherwise noted, references to Articles are to the Texas Code of Criminal
Procedure (Vernon Supp. 2004).
3. Our conclusion makes it unnecessary to consider the State's further contention that
seizure of the forklift and trailer were evidence reasonably related to the offense being
investigated, discovered in the course of a good faith search conducted within the
parameters of the search warrant, and thus admissible under the authority of such cases
as Reeves, 969 S.W.2d at 485, and Bower v. State, 769 S.W.2d 887, 897 (Tex.Crim.App.
1989), overruled on other grounds, Heitman v. State, 815 S.W.2d 681
(Tex.Crim.App.1991). 
4. Appellant refers to Article 1, Section 9 of the Texas Constitution, but does not
contend it provides greater protection from unreasonable searches and seizure than the
United States Constitution, so we do not address the application of our state constitution.
Brown v. State, 943 S.W.2d 35, 36 n. 3 (Tex.Crim.App. 1997).
5. That the light from a flashlight may have been necessary to enable the officers to
see the grind marks in the dark does not render the plain view doctrine inapplicable under
these circumstances.