MEMORANDUM OPINION



No. 04-06-00626-CR



Mitchell Kenneth HUGHES,


Appellant



v.



The STATE of Texas,


Appellee



From the County Court at Law No. 6, Bexar County, Texas


Trial Court No. 967387


Honorable Olin B. Strauss, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Catherine Stone, Justice

 Karen Angelini, Justice

 Rebecca Simmons, Justice


Delivered and Filed: November 21, 2007


AFFIRMED

 Mitchell Kenneth Hughes appeals his conviction for misdemeanor possession of marijuana.
In one issue on appeal, Hughes contends that because there was a factual dispute as to whether the
arresting officers had probable cause or consent (1) to search the premises or probable cause to arrest
him, the trial court erred in failing to instruct the jury to disregard any evidence it may believe to
have been obtained in violation of his constitutional rights. We disagree and affirm the trial court's
judgment.

Factual and Procedural Background

 On May 17, 2006, the San Antonio Police Department received an anonymous 911 call
relating information that a tall black male was selling narcotics from Room 220 at a Roadway Inn
in San Antonio. Two officers, Mark Morales and Mark Molter, were dispatched to the scene. While
both officers stood outside Room 220, Officer Morales knocked on the door. A tall black male, later
identified as Hughes, opened the door and stated that he had been set up. Officer Morales observed
baggies of marijuana on a table inside the room. The officers then ordered Hughes to the ground,
handcuffed him, and arrested him. 

 Hughes was charged with misdemeanor possession of marijuana. After pleading not guilty
to the charge, Hughes was tried before a jury, convicted, and sentenced by the trial court to 160 days
in jail and a fine of two-thousand dollars. 

 During the charge conference, Hughes requested an instruction that would allow the jury to
acquit him if it had reasonable doubt his constitutional protection from unreasonable searches and
seizures had been violated. According to Hughes, this instruction was warranted because the facts
giving rise to probable cause were disputed. The trial court, however, denied his request. Hughes
now appeals. 

Standard of Review


 In reviewing charge error, we must first determine whether error exists. Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1985). If we find error, we must then determine whether the error
caused sufficient harm to require reversal. Id.; see also Hutch v. State, 922 S.W.2d 166, 171 (Tex.
Crim. App. 1996). The degree of harm necessary for reversal depends upon whether the error was
preserved. Almanza, 686 S.W.2d at 171. Error properly preserved by an objection to the charge will
require reversal as long as the error is not harmless. Id. The court of criminal appeals has interpreted
this to mean that any harm, regardless of degree, is sufficient to require reversal. Id. But when the
charging error is not preserved, a greater degree of harm is required, and this standard of harm is
described as egregious harm. Id.

 Here, Hughes preserved error. Thus, we must first determine whether there was error. If so,
we must then determine whether that error caused harm.

Discussion


 The Fourth Amendment to the United States Constitution protects individuals from
unreasonable searches and seizures. U.S. Const. amend. IV. Although warrantless searches are
presumptively unreasonable, there are certain exceptions. Katz v. United States, 389 U.S. 347, 357
(1967); Walter v. State, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). One such exception is the
"plain view" doctrine, which allows officers to seize items in "plain view" if (1) the initial intrusion
was proper, and (2) it is immediately apparent to the officers that they have evidence before them
associated with criminal activity. Walter, 28 S.W.3d at 541. 

 Article 38.23(a) of the Texas Code of Criminal Procedure provides that no evidence obtained
by an officer in violation of the Texas or United States Constitution or the laws of the State of Texas
or the United States shall be admitted in evidence against a defendant in a criminal case. Tex. Code
Crim. Proc. Ann. art. 38.23(a) (Vernon 2005). Article 39.23(a) further provides that if the evidence
raises an issue of the admissibility of evidence because it was unlawfully obtained, the jury shall be
instructed that if it believes, or has a reasonable doubt, that the evidence was illegally obtained, then
the jury shall disregard any such evidence so obtained. Id. This instruction is required only if there
is an actual factual dispute about how the evidence was obtained. Renteria v. State, 206 S.W.3d 689,
704 (Tex. Crim. App. 2006). 

 Hughes contends that such a factual dispute exists in this case because of the inconsistencies
in the two arresting officers' testimony. We disagree.

 Both Officers Morales and Molter testified at trial. Officer Morales, in recounting the events
leading up to Hughes's arrest, testified that he and Officer Molter were dispatched to Room 220 at
the Roadway Inn in response to an anonymous 911 call indicating a tall black man was selling
narcotics from the hotel room. According to Morales, he and Officer Molter went to Room 220 and
knocked on the door. He does not recall them going to the information desk before knocking on the
door of Room 220. As they knocked on the door, they announced their presence as San Antonio
police officers. Officer Morales was standing in front of the door, and Officer Molter stood to the
side of the door. At that point, Hughes opened the door and stated that he had been set up. Officer
Morales saw that Hughes had both hands on the door. He scanned the room and saw narcotics on a
table located about ten to twelve feet from the door. According to Officer Morales, because Hughes
was standing to the side of the door, he could see everything in the room. When Officer Morales saw
the narcotics, he ordered Hughes down to the ground on his knees. The two officers then double-handcuffed Hughes because of his large size. Officer Morales estimates that from the time Hughes
opened the door until he was down on the ground, about thirty seconds elapsed. 

 Officer Molter also testified regarding the events surrounding Hughes's arrest. As did Officer
Morales, Office Molter testified that they were dispatched to a hotel where a tall black male was
dealing narcotics. According to Officer Molter, he and Officer Morales first went to the hotel office
to find out who was renting the room that they were assigned to investigate. They were told that it
was rented to a tall African American male, which matched the description they had been given.
They then went to the hotel room. According to Officer Molter, he stood to the left side of the
doorway while Officer Morales knocked on the door. They announced their presence as police
officers, and then Hughes opened the door. When Hughes opened the door, Officer Molter was
standing off to the side of the door. Officer Molter testified that Officer Morales had his gun out and
ordered Hughes to the ground. Officer Molter was then asked by the prosecutor whether he had heard
Hughes "say anything prior to that." Officer Molter replied that he had: Hughes stated that he had
"been set up." According to Officer Molter, from the time the door opened until Hughes was on the
ground was a matter of seconds. After they handcuffed Hughes, Officer Molter then looked inside
the room and saw marijuana on a table.

 The only argument advanced by the State to justify the warrantless seizure of the marijuana
was the "plain view" doctrine. Hughes argues that the inconsistencies between Officer Morales's and
Officer Molter's testimony create a fact issue as to whether Officer Morales was able to view the
marijuana from the doorway so that it was immediately apparent to him that it was, in fact,
marijuana. In support of this argument, Hughes points to the fact that although Hughes, a man six
foot five and weighing three hundred pounds, opened the door, Officer Morales claims he was able
to see everything inside the room because Hughes stood to the side similar to the hostess on the game
show "Wheel of Fortune." According to Hughes, Officer Molter's testimony disputes this description
and "present[s] a drastically different picture" because Officer Molter testified that "[Hughes]
opened the door almost the entire way" and that "[Hughes] was kind of standing off to the side of
the door, wasn't blocking the door, sort of say [sic]." According to Hughes, this discrepancy might
have given the jury reasonable doubt as to whether Officer Morales was immediately aware that the
objects on the table were narcotics the moment he forced Hughes to the ground and handcuffed him.
We disagree with Hughes's contention. 

 Although the testimony from the two officers is not exactly the same, it is certainly
consistent. It is clear from their testimony that when Hughes opened the door, he was standing to the
side and was not blocking the doorway. Both officers also testified that from the time Hughes opened
the door until he was ordered to the ground was a very short period of time. Officer Molter testified
it was a matter of seconds whereas Officer Morales was more precise and testified that it was
approximately thirty seconds. Again, this testimony is not inconsistent and does not raise a fact issue
as to whether Officer Morales was able to see and identify the substance on the table as narcotics
before ordering Hughes to the ground and handcuffing him. 

 Hughes additionally points to the fact that Officer Morales testified that he did not have his
gun drawn when he knocked on the door to the hotel room, but Office Molter testified that he did.
Thus, according to Hughes, the jury could have believed that Officer Morales seized Hughes the
moment the door was opened and before he could have viewed anything inside that would give him
probable cause to arrest Hughes. In support of this argument, Hughes points to the testimony of
Officer Molter, wherein he is asked, after testifying that Hughes had opened the door, what happened
next. Officer Molten testified that "Officer Morales had his gun out, ordered the suspect on to the
ground." Again, we do not perceive an inconsistency between Officer Morales's and Officer
Molter's testimony. That Officer Molter testified Officer Morales had his gun out and ordered the
suspect to the ground does not mean that Officer Morales did not have an opportunity to observe the
narcotics on the table inside the room before drawing his gun. 

 Similarly, Hughes points to the testimony of the two officers regarding the reason for the
arrest. Hughes argues that according to Officer Morales's version of the events, the arrest was
effectuated because Officer Morales was able to view the narcotics from the doorway and perceive
that they were narcotics. Office Molter was asked whether he heard Hughes say anything to which
Molter answered that Hughes said, "I've been set up." Officer Molter was then asked how much time
elapsed from the time Hughes made this statement until he was on the ground, to which Officer
Molter responded "seconds." According to Hughes, this testimony from Officer Molter amounts to
a statement that Hughes was ordered to the ground because he made the statement that he had been
set up. Again, we see no inconsistency between the two officers' testimony. Although Officer
Molter testified to the amount of time that elapsed between Hughes's statement and him being
ordered to the ground, he did not testify that Hughes was arrested because he made the statement. 
 Thus, the evidence at trial was consistent in showing that Officers Morales and Molter
approached the hotel room and knocked on the door. Nothing in the Constitution prevents a police
officer from "knocking politely on any closed door." State v. Perez, 85 S.W.3d 817, 819 (Tex. Crim.
App. 2002). The evidence then shows that Hughes voluntarily opened the door, allowing Officer
Morales to see the marijuana on the table. Thus, because the marijuana was in plain view, there was
no illegal search and seizure of the marijuana. Finally, once Officer Morales saw that Hughes
possessed marijuana, he lawfully arrested him without a warrant. See Tex. Code Crim. Proc. Ann.
art. 14.01(b) (Vernon ) ("A peace officer may arrest an offender without a warrant for any offense
committed in his presence or within his view."); see also Miles v. State, No. PD-1047-06, 2007 WL
3010420, at *6 (Tex. Crim. App. Oct. 17, 2007).

 Thus, we conclude it was not error for the trial court to refuse to give the instruction Hughes
requested.

Conclusion


 Finding no error, we affirm the trial court's judgment. 


 Karen Angelini, Justice

Do Not Publish


1. We note that although Hughes states in his first issue that there was no consent to search the premises, consent
to search is not an issue in this appeal. The State does not argue that Hughes consented to the search.