COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-07-121-CR

NO.  2-07-122-CR

NO.  2-07-123-CR

 

 

DERRICK DEVON DAVIS                                                       APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








The trial court convicted Appellant Derrick Devon
Davis upon his pleas of guilty of possession of body armor by a felon, unlawful
possession of a firearm, and possession of a controlled substance, namely,
cocaine, in the amount of four or more but less than two hundred grams.  Each offense was charged in a separate
indictment.  Two indictments, those charging
the unlawful possession of a firearm and possession of cocaine, also contained
a repeat offender notice, to which Appellant pled true.  The trial court sentenced him to seven years=
confinement in each case, and Appellant reserved the right to appeal the trial
court=s denial
of his motion to suppress in each case.

In all three cases, Appellant argues that the
trial court erred in denying his motion to suppress because, for various
reasons, the search was unlawful. Because the trial court did not err by
denying the motion to suppress, we affirm the trial court=s
judgments.








Grand Prairie Police Officers Lovelace and
Hickman were at the South Budget Suites Motel in Grand Prairie, Texas,
investigating a matter unrelated to this case when they received a complaint
from a resident of the motel about loud music coming from one of the
suites.  The officers determined that the
music was coming from suite 1069, Appellant=s
suite.  There was also evidence that this
was his residence.  The officers looked
through the windows and could see people in the front room.  Lovelace knocked on the door, and Appellant
opened the door about a foot.  Lovelace
detected the odor of marijuana.  He
testified at the suppression hearing that Asmoke
just came pouring out of the room.@  Appellant initially denied that he was
smoking marijuana; he later admitted to Lovelace that he and the other
occupants of the room had been smoking marijuana but claimed that it had all
been smoked and that he did not have any more in the suite.

The officers entered Appellant=s suite
without asking permission and without Appellant=s
invitation.  The suite had a common
living room/kitchen area and a bedroom and bathroom beyond it.  After they entered the front room, the
officers found a woman inside the bedroom area and a man in the bathroom.  Lovelace saw baggies, scales, bits of
marijuana, and marijuana seeds lying on the table in plain view.  The officers did not find any burning
marijuana.  Nor is there any mention of
the officers= observations of music playing
or any means of playing music after they entered Appellant=s suite.

Lovelace asked Appellant if he had more
marijuana.  Appellant said no, and
Lovelace responded that he knew that Appellant was lying.  Appellant walked to the refrigerator, opened
the freezer door, and took out a small baggie of marijuana.  Lovelace saw other bags in the freezer and
proceeded to search the freezer, finding a larger bag of marijuana and a small
baggie of crack cocaine. 








Hickman asked Appellant if there were any guns in
the suite.  Appellant told the officers
that there were guns in the bedroom.  The
officers handcuffed all three occupants of the front room and searched the
bedroom.  Lovelace found body armor on
the bed, a photograph of Appellant wearing the body armor, a revolver between
the mattress and box springs, and under the bed, surrounded by clothing and other
items, a rifle.

The officers arrested Appellant at that
point.  Appellant was charged with
possession of body armor by a felon, unlawful possession of a firearm, and
possession of a controlled substance. 

Appellant filed a motion to suppress in each case,
contending that he was arrested, any statements were taken, and any evidence
was seized Awithout lawful warrant, probable
cause, or other lawful authority in violation of@ the
federal and state constitutions.  After
the hearing on Appellant=s motion to suppress, the trial
court entered oral findings of fact and conclusions of law into the record:

[O]n the night in question, the officers were stopped by a resident of
the Budget Suites who told the officers that noise was coming out of an
apartment that was being very loud [and] that was disturbing his sleep.

 

. . . [T]he City of Grand Prairie has an ordinance which states that
there cannot be a lot of noise at various apartment complexes and
hotel/motels.  The officer at this time
went with the party to his apartment [and] heard noise [which] he determined to
be coming from apartment 1069.  Went to
this apartment, verified that this, in fact, was the apartment in
question.  Knocked on the door, the door
was opened. [Appellant] was the occupant of the apartment.

 








When the door was opened, the officer observed smoke, as he states,
pouring out of the room.  He smelled a
strong odor of marijuana.  He asked
[Appellant] if, in fact, he did have any marijuana. [Appellant] at first
answered no, but then admitted to smoking marijuana.  Told the officer that he didn=t have any[ ]more.  Officer Lovelace and Hickman together with
the security officer went into the apartment.

 

At that time the officer observed in plain view baggies, scales, [and]
marijuana on the dining room table.  He
asked [Appellant] if there was any additional contraband in the apartment and
Mr. Davis told him that there was a little marijuana in the freezer.  They went to the freezer, opened up the
freezer, and they found not only marijuana, but crack cocaine.

 

At that point the officer asked [Appellant] if there were any weapons
in the apartment.  [Appellant] did tell
the officer that there were weapons in the bedroom.  The officer at that time detained all of the
occupants, which included two other people, a male and a female.  They went into the bedroom, found a bullet
proof vest on the bed, underneath the bed they found a gun and a rifle.

 

The apartment or suite . . . was registered to [Appellant]. [He] was
placed under arrest. . . . [W]hen he was placed under arrest the officers found
not only the room key, but also some additional contraband in [his]
pocket.  All of this took approximately
33 minutes from the time that the officer was notified of the noise to the time
of the arrest of [Appellant].

 

These
basically were the facts. . . . 

 

. . . .  The Court=s opinion is first of
all, that there w[ere] extenuating circumstances and there was an emergency at
this time.  That the officers were called
legally because of the noise and that there was such a noise ordinance in the
City of Grand Prairie.  That once they
knocked on the door and once the door was opened and that they smelled a strong
odor of marijuana, that they did have reasonable suspicion and probable cause
to enter the suite.

 








And upon entering the suite in full view the officers found
contraband.  And after questioning
[Appellant], [he] admitted that he did, in fact, possess the contraband and . .
. Cand I might add was very
cooperative with the officers by telling them all this and the fact that he
told them that he also had weapons in there.

 

[Appellant], I believe, was not coerced or was not threatened in order
to give this information.  As such, the
Court is going to make a finding that your Motion to Suppress is denied, that
the officers did have an emergency to be in there, that there were extenuating
circumstances.  Which meant that they did
not have the time or were not required to go back out, shut everything down,
and request that a search warrant be issued.

 

That=s going
to be the order of the Court.   

In five points in each case, Appellant argues
that the trial court erred by denying his motion to suppress evidence of the
body armor, the controlled substances, and the firearm because the evidence was
discovered as the result of custodial interrogation conducted without Appellant=s being
advised of his rights, because the officers failed to obtain a warrant, and
because the warrantless searches were not justified by consent or exigent
circumstances, as searches incident to arrest, or on any other basis.  








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.[2]  In reviewing the trial court=s
decision, we do not engage in our own factual review.[3]  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.[4]  Therefore, we give almost total deference to
the trial court=s rulings on (1) questions of
historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.[5]  But when application-of-law-to-fact questions
do not turn on the credibility and demeanor of the witnesses, we review the
trial court=s rulings on those questions de
novo.[6]









Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.[7]  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court=s
ruling, supports those fact findings.[8]  We then review the trial court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling.[9]

We must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.[10]









As Appellant reminds us, the Fourth Amendment
grants individuals Athe right to be secure in their
persons, houses, papers, and effects against unreasonable searches and
seizures.@[11]  Likewise, the Texas Constitution provides
that Athe
people shall be secure in their persons, houses, papers, and possessions from
all unreasonable seizures or searches, no warrant to search any place, or to
seize any person or thing, shall issue without describing them as near as may
be, nor without, probable cause, supported by oath or affirmation.@[12]  Article 38.23(a) of the Texas Code of
Criminal Procedure prohibits use of any evidence secured in violation of the
constitution or laws of Texas or of the United States.[13]  That is, article 38.23(a) is a statutory
exclusionary rule.[14]


As Appellant also points out, the odor of burning
marijuana, without more, has been held insufficient to give law enforcement
officers probable cause to believe that a specific person has committed the
offense of possession of marijuana in the officer=s
presence.[15]  Consequently, the mere odor of burning
marijuana, without more, does not permit officers to conduct a search of a
person=s home
without a search warrant.[16]









Article I, section 9 of the Texas Constitution
contains no requirement that a seizure or search be authorized by a warrant,
and the Texas Court of Criminal Appeals has held that a seizure or search that
is otherwise reasonable does not violate that provision simply because it was
not authorized by a warrant.[17]   But the Texas Court of Criminal Appeals has
also recognized that A[p]ursuant to the Fourth
Amendment, a warrantless search of either a person or property is considered
per se unreasonable subject to a >few
specifically defined and well established exceptions.=@[18]

In the case now before this court, the trial
court entered oral findings of fact into the record.  The officers were called regarding a noise
complaint, which was a violation of a municipal ordinance and a misdemeanor
offense.[19]
The noise was coming from Appellant=s
suite.  When Appellant opened the door,
the officers became aware that there was probable cause to believe that another
offense was being committed in their presence, possession of marijuana, because
the marijuana smoke Apoured@ out.








We have two different legal justifications at
play here.  One, the law allows a police
officer to arrest for an offense committed in the officer=s
presence,[20] and two, the law also allows an
officer to search even a home if both probable cause that a crime is being
committed and exigent circumstances are present.[21]  As the Texas Court of Criminal Appeals has
succinctly explained,

The Fourth Amendment
grants individuals Athe right . . .
to be secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures.@  In
determining the reasonableness of a search or seizure, the actions of police
are judged by balancing the individual=s privacy interest against the Government=s interest in law
enforcement.  The balancing test is
utilized to ensure that an individual=s Fourth Amendment rights are not subjected to @invasions at the
unfettered discretion of officers in the field.@

 

There is a strong preference for searches to be administered pursuant
to a warrant.  In fact, the search of a
residence without a judicially authorized warrant is presumptively
unreasonable.  However, this does not
mean all searches must necessarily be conducted under the authority of a
warrant.  For example, if police have
probable cause coupled with an exigent circumstance, or they have obtained
voluntary consent, or they conduct a search incident to a lawful arrest, the
Fourth Amendment will tolerate a warrantless search.  Yet, the warrant requirement is not lightly
set aside, and the State shoulders the burden to prove that an exception to the
warrant requirement applies.[22]

 








Parker v. State is, in
many respects, similar to the case now before this court.[23]   On appeal, Parker argued that A>[w]hile
the odor of marijuana, coupled with other evidence, may give rise to probable
cause, the odor of marijuana alone does not justify a warrantless search of a
residence=@ and
that A>[t]he
case law in Texas regarding the existence of probable cause and exigent
circumstances sufficient to allow officers to make a warrantless entry into a
residence, based on the smell of contraband is, at first glance, confusing.=@[24]   The Texas Court of Criminal Appeals  granted review Ain the
hope of dispelling any lingering confusion concerning the existence of probable
cause to cross the threshold of a home when officers smell the odor of
contraband emanating from that residence.A[25]  The court explained,

Appellant=s
confusion may stem from the fact that the standards for a warrantless entry
into a home differ from those for a warrantless arrest.   Each action requires the police to jump over
two distinct hurdles.  In both situations
the first hurdle involves the existence of probable cause to believe that some
offense has been or is being committed, but differs depending on whether
probable cause points to a person (arrest) or a location (search).  The second hurdle differs depending on
whether the officer is crossing the threshold of a home without a warrant to
investigate an offense, or he is making a warrantless arrest.








Under Texas law, a police officer must have both probable cause with
respect to the person being arrested, plus statutory authority to make that
arrest.  To establish probable cause to
arrest, the evidence must show that A>at that moment [of the arrest] the facts and
circumstances within the officer=s knowledge and of which he had reasonably
trustworthy information were sufficient to warrant a prudent man in believing
that the arrested person had committed or was committing an offense.=A  There is, of course, a significant difference
between the notion that there is probable cause to believe that someone has
committed an offense and probable cause to believe that this particular person
has committed an offense.  Probable cause
to arrest must point like a beacon toward the specific person being
arrested.  Second, the police officer who
lacks a warrant to arrest must have statutory authority to make such a
warrantless arrest. 

 

On the other hand, when the question is probable cause to cross the
threshold of a private residence, probable cause may point to the location, but
not necessarily a specific person. 
Again, the State must leap two hurdles. 
In Estrada v. State, this Court recently reiterated the well‑established
probable cause standard that applies to a warrantless entry or search of a
specific location:  A>Probable cause to search
exists when reasonably trustworthy facts and circumstances within the knowledge
of the officer on the scene would lead a man of reasonable prudence to believe
that the instrumentality of a crime or evidence of a crime will be found.=A  Probable cause that points like a beacon
toward the location (but not necessarily any particular person) is the first
hurdle.  The second hurdle is that
exigent circumstances, those which justify an immediate need to enter a
residence without first obtaining a search warrant, must also exist.  If either probable cause or exigent
circumstances are not established, a warrantless entry will not pass muster
under the Fourth Amendment.

 

Appellant relies on this Court=s decision in 
State v. Steelman as support for his argument that, as a matter
of law, the odor of marihuana by itself is insufficient to establish probable
cause for an officer to enter a home without a warrant. 

 








Appellant reads too much into
that case.  In Steelman, police
officers entered the defendant=s home
and arrested everyone in the room after smelling the odor of marihuana when the
defendant opened the door.  We concluded
that the odor of marihuana emanating from a home cannot, by itself, justify a
reasonable belief that any particular individual present had committed or was
committing any particular offense.  In Steelman
we noted that A>odors
alone do not authorize a search without a warrant.=A  But we did not, as appellant argues, find
that the odor of marihuana alone was insufficient to establish probable cause
to believe that someone had committed or was then committing the offense of
possession of marihuana.  With respect to
a warrantless entry and arrest, Steelman simply reiterated what
previously had been well established: 
the odor of marihuana emanating from a residence, by itself, is
insufficient to establish both the probable cause and statutory authority
required for a warrantless arrest of a particular person inside.[26]


In the case before us, when the officers heard
loud music coming from Appellant=s suite,
a crimeCthat is,
a violation of the municipal noise ordinanceCwas
being committed in their presence.  They
were justified in knocking on the door to Appellant=s suite
to confront him, to instruct him to lower the volume of the music, and to issue
him a citation.  When Appellant opened
the door, the officers were greeted with marijuana smoke.  We note that the officers testified that
fresh marijuana smoke continued to emanate from the room despite Appellant=s claim
that he and the other occupants had smoked all the marijuana they had.  








Although the smoke did not provide probable cause
to arrest a specific person, it did provide probable cause to investigate the
marijuana offense.  And, as the State
points out, the Texas Court of Criminal Appeals has held that the odor of
marijuana, coupled with a loud music complaint, is sufficient to justify
warrantless entry into a residence to investigate.[27]  Based on the above reasoning, we hold that
the trial court did not abuse its discretion by concluding that the officers
legally entered Appellant=s suite.








After the officers entered the room, Lovelace saw
baggies, scales, bits of marijuana, and marijuana seeds in plain view.[28]  He therefore saw an offense, possession of
marijuana, committed within his view.[29]
 Lovelace testified that, having seen the
baggies and the scales, he believed that there was more marijuana than a small
amount for personal use.  (Although
Appellant was being investigated, he had not been placed under arrest at this
point.) Lovelace asked Appellant if he had any more marijuana, and Appellant
eventually walked to the freezer, opened it, and produced a small baggie of
marijuana.  Lovelace could see additional
bags in the freezer before Appellant closed the door.  Lovelace opened the freezer again to verify
the other baggies of marijuana, and he also found a small baggie of what he
believed to be crack cocaine.  Because
the officer was legitimately in the suite when he saw the bags in the freezer,
his observations and seizure of the drugs can be justified under the plain view
doctrine.[30]


At this point, Lovelace was concerned about
weapons because, he testified, it is fairly common if large amounts of illegal
narcotics are present to have weapons involved. 
The other officer, Hickman, asked if there were any guns, and Appellant
replied that there were guns in the bedroom. 
Before searching for guns, the officers handcuffed everyone for the
officers=
safety.          Lovelace
admitted that Appellant had not consented to his entry into the room and that
he did not give Appellant Miranda[31]
warnings when he first handcuffed him. 
He testified that because Appellant and the others had been handcuffed
merely for the safety of the officers, they were not under arrest, despite the
fact that the officers  had already seen
scales, marijuana seeds and residue, a small baggie of marijuana, a large
baggie of marijuana, and crack cocaine. 
Lovelace did concede that Appellant was not free to leave and that,
given that Lovelace was in uniform with a badge and a gun, it was clear that
Appellant could not walk out the door.








Lovelace admitted that from the time Appellant
first opened the door, and, certainly, from the time the officers entered the
room, the two police officers and the security guard who accompanied them had
control of the situation.  There was no
scurrying about and no attempt to hide or destroy anything.  

We conclude that from the point that Appellant
was handcuffed and clearly not free to leave, he was in custody.[32]  The police officers were obligated to warn
him of his right to remain silent and his right to counsel before asking any
further questions.[33]









After handcuffing all persons present, Lovelace
asked Appellant where the guns were, and Appellant told him they were under the
bed.  While he was looking for the guns,
Lovelace found a bulletproof vest carrier that had ballistic panels in it.  It was lying on top of the bed.  Lovelace testified that it was basically body
armor.  Because Lovelace had not yet
found the firearms, he asked Appellant again where they were and was given a
more specific description of their location. 

Lovelace did not testify that he searched the area
within the reach of the three inhabitants of the room for his own safety.  In fact, he admitted that the guns and armor
were nowhere within the wingspan or the immediate area of Appellant when
Lovelace entered the suite.  All three
suspects were in the living room when Lovelace went into the bedroom to search
for weapons.  After discovering the armor
and the guns and after arresting but before transporting Appellant, Lovelace
learned that Appellant was a convicted felon. 
Not until that point did Lovelace realize that he had viewed an offense
when he saw the armor and the firearms.  








Hickman=s
questions about the presence of firearms and Lovelace=s about
the presence of contraband were all noncustodial inquiries, occurring before
Appellant was handcuffed.  Custodial
inquiries related only to the exact location of the weapons in the
bedroom.  The officers already knew there
were firearms in the bedroom; it would be unreasonable to expect them to not
retrieve the weapons.  Although the
question regarding their exact location was asked after the three suspects were
in handcuffs, the question served to limit the intended search, not to
incriminate Appellant.  The armor was in
plain view in the bedroom and was observed as a result of the officers= prior
knowledge that there were weapons somewhere in the bedroom.[34]


Because we must uphold the trial court=s ruling
on a motion to suppress if it is supported by the record and correct under any
theory of law applicable to the case,[35]
we overrule all of Appellant=s points
and affirm the trial court=s
judgments.

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL A: CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED:  April 24, 2008

 

 











[1]See Tex. R. App. P. 47.4.





[2]Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). 





[3]Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).






[4]Wiede v. State, 214 S.W.3d 17, 24-25
(Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim.
App. 2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).





[5]Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); Johnson v.
State, 68 S.W.3d 644, 652‑53 (Tex. Crim. App. 2002). 





[6]Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652‑53.





[7]Wiede, 214 S.W.3d at 24; State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). 





[8]Kelly, 204 S.W.3d at
818-19.  





[9]Id. at 819.   





[10]State v. Stevens, 235 S.W.3d 736,
740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
541 U.S. 974 (2004). 





[11]U.S. Const. amend. IV. 





[12]Tex.
Const. art.
I, ' 9.  





[13]Tex.
Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005). 





[14]See Miles v. State, 241 S.W.3d 28, 36 (Tex.
Crim. App. 2007).





[15]See State v. Steelman, 93 S.W.3d 102, 108
(Tex. Crim. App. 2002). 





[16]Id.





[17]Hulit v. State, 982 S.W.2d 431, 436
(Tex. Crim. App. 1998).





[18]McGee v. State, 105 S.W.3d 609, 615
(Tex. Crim. App. (quoting Minnesota v. Dickerson, 508 U.S. 366, 372, 113
S. Ct. 2130, 2135 (1993)), cert. denied, 540 U.S. 1004 (2003).





[19]Grand
Prairie, Tex., Code of Ordinances ch. 13, art. XIII, '' 13-277, 13-285 (2007), available
at  http://www.municode.com/resources/gateway.asp

?sid=43&pid=10142.





[20]Tex.
Code Crim. Proc. Ann. art. 14.01 (Vernon 2005); Griffin v. State, 215 S.W.3d 403,
410 (Tex. Crim. App. 2006). 





[21]Gutierrez v. State, 221 S.W.3d 680, 685
(Tex. Crim. App. 2007) (citing McGee, 105 S.W.3d at 615). 





[22]Id. at 684-85 (citations
omitted).





[23]206 S.W.3d 593 (Tex.
Crim. App. 2006).





[24]Id. at 596.





[25]Id.





[26]Id. at 596-98 (citations
omitted).





[27]Estrada, 154 S.W.3d at 609B10.





[28]See Walter v. State, 28 S.W.3d 538, 541
(Tex. Crim. App. 2000) (discussing the plain view doctrine)





[29]See Tex. Code Crim. Proc. Ann. art. 14.01(b) (Vernon 2005)
(allowing officer to arrest for offense committed within his or her view).





[30]See Walter, 28 S.W.3d at 541.





[31]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct.
1602 (1966).

 

 





[32]See Rosalez v. State, 875 S.W.2d 705, 718
(Tex. App.CDallas 1993, pet. ref=d) (holding Rosalez was Aarrested at the moment
Hughey physically restrained him and secured him with handcuffs@); see California v.
Hodari D., 499 U.S. 621, 626‑28, 111 S. Ct. 1547, 1551 (1991)
(holding person is arrested for Fourth Amendment purposes when his movement is
restrained by peace officer's application of physical force or he submits to an
assertion of authority by peace officer); Amores v. State, 816 S.W.2d
407, 411 (Tex. Crim. App. 1991) (holding arrest occurs when person's liberty of
movement is restricted or restrained).





[33]Miranda, 384 U.S. at 478-79, 86
S. Ct. at 1630.





[34]See Walter, 28 S.W.3d at 541.





[35]See Stevens, 235 S.W.3d at 740; Armendariz,
123 S.W.3d at 404.