# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00472-CR

**Oscar Capetillo Lopez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-08-334, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Oscar Capetillo Lopez of possession of a controlled substance with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112 (West Supp. 2009). The jury also found two enhancement paragraphs to be true and assessed punishment at eighty years in prison. Lopez argues that the searches pursuant to which the narcotics were seized were either illegal or based on invalid search warrants and, therefore, the district court should have granted his motion to suppress. He also argues that the trial court erred by submitting an incomplete jury instruction. We affirm the judgment of conviction.

On December 13, 2007, San Marcos police received a tip from an anonymous 911 caller that Lopez was selling drugs to minors at either 519 or 915 Gravel Street in San Marcos. However, officers were acquainted with Lopez from a previous narcotics investigation and knew that he, in fact, resided at 917 Gravel Street. When officers arrived at Lopez's residence, Lopez

and several other people were standing outside in the driveway. As soon as Lopez saw the police arrive, he ran toward the back of his house and behind a shed. In their pursuit, police observed Lopez discard a clear plastic bag. After discarding the bag, Lopez stopped running and voluntarily approached police, who handcuffed and detained him. Police walked to the spot where they had seen Lopez throw the bag and seized it. They discovered that it contained two smaller baggies, each of which contained a white powdery substance, later identified as cocaine weighing a total of 1.14 grams.

When police were escorting Lopez to the patrol car, Lopez began shouting to other men in Spanish. One of the other men entered Lopez's residence. Police entered the house and detained that man. They then made a sweep of Lopez's residence and secured the premises while they awaited a search warrant. A warrant was issued, and police searched the residence, assisted by a drug dog. They found a large plastic bag containing a white substance in one of the bedrooms, later identified as cocaine with an aggregate weight of 53.77 grams. Police also seized several smaller plastic bags and an electronic scale.

Lopez was indicted on one count of possession of a controlled substance with intent to deliver and on two counts of endangering a child. Only the possession count was submitted to the jury. The jury convicted Lopez as charged, and—finding two enhancement paragraphs to be true—assessed punishment at eighty years in prison. Lopez argues that the searches pursuant to which the cocaine was seized were either illegal or based on invalid search warrants and, therefore, the district court erred in refusing to grant his motion to suppress. He also argues that the trial court erred by submitting an incomplete instruction to the jury.

2

In his first two issues, Lopez argues that the first search, the search by which police recovered the smaller bag of cocaine outside Lopez's residence, violated his rights under both the United States Constitution and the Texas Constitution because police had no probable cause to enter the curtilage of Lopez's residence. We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *see also Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court's denial of a motion to suppress is reviewed for an abuse of discretion, *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999), but when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we apply a de novo standard of review, *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

A police officer may stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref'd). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances. *Woods*, 956 S.W.2d at 38. A detaining officer must have specific, articulable facts that, taken together with rational inferences from those facts, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.*

An officer may rely upon information received through an informant, rather than on his direct observation, so long as the officer confirms enough facts so that he may reasonably conclude that the information provided is reliable and a detention is justified. *See Alabama v. White*,

496 U.S. 325, 330-31 (1990). This does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. *Brother v. State*, 166 S.W.3d 255, 259 (Tex. Crim. App. 2005). Rather, it means that the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified. *Id.*

When the police receive information from an informant, the totality of the circumstances includes the veracity and reliability of the informant and the informant's information, as well as the basis for the informant's knowledge. *See Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). An anonymous tip alone will rarely establish the level of reasonable suspicion required to justify a detention. *Florida v. J.L.*, 529 U.S. 266, 270 (2000); *White*, 496 U.S. at 329. There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *Pipkin v. State*, 114 S.W.3d 649, 654 (Tex. App.—Fort Worth 2003, no pet.). An officer's prior knowledge, his experience, and his corroboration of the details of the tip may be considered in establishing reasonable suspicion. *White*, 496 U.S. at 329-30.

The responding officer here, Officer Elrod, had been previously acquainted with Lopez due to Lopez's involvement in at least one other drug-related investigation. The initial tip came in the form of an anonymous 911 call. Although anonymous, the caller was apparently a witness to the events, as the caller identified Lopez by name and described what he was wearing and where he was selling drugs. Elrod found Lopez in the place described and wearing the clothing described. Elrod also observed Lopez standing in his driveway with several other people. These

4

observations were consistent with the information reported by the anonymous caller. As soon as Lopez saw Elrod, Lopez looked concerned, pushed past the other people in the driveway, and began running toward a shed in the backyard.

Viewing this evidence in its totality—including Elrod's prior knowledge of Lopez, the details learned from the 911 call, which were corroborated by Elrod's first-hand observations, and Lopez's reaction to Elrod's arrival—the district court could have concluded that police had formed a reasonable suspicion that Lopez had been, or soon would be, engaged in criminal activity. *See Woods*, 956 S.W.2d at 38. Based on this reasonable suspicion, Officer Elrod was justified in detaining Lopez for investigative purposes.

At the point that police formed a reasonable suspicion that Lopez had been or would be engaged in criminal activity, Lopez was still in his driveway, along with several other people. Lopez's driveway is both visible and accessible to the public. Therefore, at that point—the point when reasonable suspicion arose—Lopez had no reasonable expectation of privacy. *See Bower v. State*, 769 S.W.2d 887, 897 (Tex. Crim. App. 1989), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681, 685 (Tex. Crim. App. 1991). Having formed a reasonable suspicion, police began to approach Lopez to question him. Lopez ran, ignoring orders from police to stop. When Lopez ran, he was, as the district court found, evading arrest or detention, *see* Tex. Penal Code Ann. § 38.04 (West Supp. 2009), and police began lawfully pursuing him. In the course of this lawful pursuit, Lopez ran to the back part of his yard, where he discarded the bag containing cocaine. The police arrested Lopez and seized the bag of cocaine that Lopez had discarded in their plain view.

The plain view doctrine allows officers, without a warrant, to seize items that they believe to be evidence or contraband if certain criteria are met. The theory supporting the doctrine is that there are no privacy interests for items kept in plain sight, and therefore, the prohibitions against unreasonable searches and seizures are not implicated. *See Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). The plain view doctrine requires that (1) law enforcement officials have a right to be where they are, and (2) it is immediately apparent that the item observed or seized may constitute evidence, that is, there is probable cause to associate the item with criminal activity. *Walter*, 28 S.W.3d at 541; *Ramos v. State*, 934 S.W.2d 358, 365 (Tex. Crim. App. 1996); *Arrick v. State*, 107 S.W.3d 710, 719 (Tex. App.—Austin 2003, pet. ref'd). Probable cause requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime. *Texas v. Brown*, 460 U.S. 730, 742 (1983).

Here, the record supports a finding that the State established both elements of the plain view doctrine. We have found that the district court could have concluded that police had formed a reasonable suspicion that Lopez had been, or soon would be, engaged in criminal activity, and, therefore, an investigative detention was appropriate. Thus, the first element—that police were in a legally permissible location to make a plain view seizure—is satisfied. *See Walter*, 28 S.W.3d at 541. The record also supports a finding that the State satisfied the second element, which requires that it be immediately apparent that there is probable cause to associate the object observed or seized with criminal activity. *See id.* Police observed Lopez discarding a clear plastic bag. Based on the anonymous tip police had received—that Lopez was selling drugs—and on the fact that, after

6

discarding the bag, Lopez willingly approached police, the district court could have found that the second element of the plain view doctrine had been satisfied—that it was immediately apparent to police that there was probable cause to associate the bag with criminal activity. Indeed, when officers approached the place where Lopez had thrown the bag, they discovered that it contained two smaller baggies, each containing a white powdery substance.

In sum, the record supports the district court's conclusion that the seizure of the 1.14-gram bag of cocaine was proper. Police had reasonable suspicion to make an investigative detention of Lopez. When Lopez ran, police lawfully pursued and detained him. In the course of the pursuit and detention, police observed Lopez discard a clear plastic bag in their plain view. Having lawfully detained Lopez, police were justified in seizing the bag under the plain view doctrine. Accordingly, we overrule Lopez's first two issues.

In his third and fourth issues, Lopez argues that the second search, the search of his residence, violated his rights under both the United States Constitution and the Texas Constitution because the magistrate judge did not have probable cause to issue the search warrant. Probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986); *State v. Bradley*, 966 S.W.2d 871, 873 (Tex. App.—Austin 1998, no pet.). The sufficiency of the affidavit is determined by considering the totality of the circumstances set forth within the four corners of the document. *Gates*, 462 U.S. at 238; *Bradley*, 966 S.W.2d at 873. The affidavit must be interpreted in a common sense and realistic manner, recognizing that reasonable inferences

7

may be drawn from the affidavit. *Hedspeth v. State*, 249 S.W.3d 732, 737 (Tex. App.—Austin 2008, pet. ref'd). The issuing magistrate's determination of probable cause must be given great deference and will be sustained if the magistrate had a substantial basis for concluding that probable cause was shown. *Gates*, 462 U.S. at 236-37; *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004).

According to Lopez, all of the information presented to the magistrate in the probable cause affidavit indicates that controlled substances would probably be found in Lopez's yard, not in his house. On this point, Lopez notes that the confidential informant told dispatch that the narcotics were stored in a pipe outside Lopez's house. However, beyond this information, the affidavit contained additional facts—based, in part, on the first search, which, as we have concluded, complied with constitutional requirements—to justify a conclusion that narcotics would probably be found in Lopez's residence.

The affidavit included information derived from the anonymous tip and from the first search. Tommy Villanueva, the affiant peace officer, stated that a witness had observed Lopez selling narcotics to children and that police had confirmed that Lopez was in the location described, wearing the clothes described, and surrounded by a group of people. Lopez immediately fled from police, and upon further investigation, police learned that Lopez had been in possession of a bag containing a substance that a field analysis showed contained cocaine. In addition to information derived from the tip and from the search warrant, Villanueva's affidavit contained information from police records, showing that officers had previously investigated Lopez at least once for narcotics dealings and that Lopez had been previously arrested eight times for drug-related offenses.

8

In the affidavit, Villanueva also describes his own background in narcotics, stating that, based on his experience narcotics dealers usually conduct their narcotics operations—and store information about their operations—in their residences.

Based on the totality of the circumstances set forth in Villanueva's affidavit, and drawing relevant inferences, the magistrate was justified in concluding that narcotics would probably be found in Lopez's residence. *See Gates*, 462 U.S. at 236-38; *Cassias*, 719 S.W.2d at 587; *Hedspeth*, 249 S.W.3d at 737. Accordingly, we overrule Lopez's third and fourth issues.

In his fifth issue, Lopez argues that the district court submitted an incomplete jury instruction on the use of juror notes and that this incomplete instruction caused Lopez egregious harm. Specifically, Lopez argues that egregious harm resulted from the omission of the caution that notes should not be used to resolve testimony disputes and that such disputes must be resolved by resorting to the official transcript.

The decision to allow juror note-taking lies within the trial court's sound discretion. *Price v. State*, 887 S.W.2d 949, 954 (Tex. Crim. App. 1994). The Texas Court of Criminal Appeals has set out the following instruction to be given, which in this case was given:

> You have been permitted to take notes during the testimony in this case. In the event any of you took notes, you may rely on your notes during your deliberations. However, you may not share your notes with the other jurors and you should not permit the other jurors to share their notes with you. You may, however, discuss the contents of your notes with the other jurors. You shall not use your notes as authority to persuade your fellow jurors. In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes.

*See id.* at 955.  Also included in the instruction set out in *Price*, but not included in the instruction given here, is the following:

> Your notes are not official transcripts.  They are personal memory aids, just like the notes of the judge and the notes of the lawyers.  Notes are valuable as a stimulant to your memory.  On the other hand, you might make an error in observing or you might make a mistake in recording what you have seen or heard.  Therefore, you are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial.
>
> Occasionally, during jury deliberations, a dispute arises as to the testimony presented.  If this should occur in this case, you shall inform the Court and request that the Court read the portion of disputed testimony to you from the official transcript.  You shall not rely on your notes to resolve the dispute because those notes, if any, are not official transcripts.  The dispute must be settled by the official transcript, for it is the official transcript, rather than any juror's notes, upon which you must base your determination of the facts and, ultimately, your verdict in this case.

*See id.*

Even accepting Lopez's argument that the district court erred by not submitting the instruction exactly as set out by the court of criminal appeals in *Price*, reversal is not warranted.  Where, as here, no objection is made to the charge at trial, we reverse for charge error only if the record shows that the error caused egregious harm.  *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  Harm must be actual harm and must be evidenced in the record.  *Id.*

There is no indication in the record to suggest that anything in the jury's decision was a result of a juror's having relied on his own notes or the notes of another juror rather than on the official transcript in reaching his decision.  Nothing in the record indicates that there was any dispute about the evidence at all.  Indeed, nothing in the record show that the jurors took notes to which

they later referred during deliberations.  Thus, Lopez cannot show actual harm, as required under *Almanza*.  *See id.*  Accordingly, we overrule Lopez's fifth issue.

Having overruled each of Lopez's issues, we affirm the judgment of conviction.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   August 6, 2010

Do Not Publish

11