# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00450-CR

**Christine Danielle Baker, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 8 OF TRAVIS COUNTY
NO. C-1-CR-12-212363,
HONORABLE CARLOS HUMBERTO BARRERA, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Christine Danielle Baker was arrested for driving while intoxicated. After the trial court denied her motion to suppress evidence, appellant pleaded nolo contendere, and the trial court sentenced her in accordance with a plea agreement. On appeal, appellant challenges the denial of her motion to suppress. For the reasons that follow, we affirm.

## BACKGROUND

In the trial court, appellant moved to suppress evidence from the traffic stop that resulted in her detention and arrest. Appellant was driving her vehicle at around 1:48 a.m. on July 25, 2012, when an officer pulled her vehicle over. In his affidavit for warrant of arrest and detention, the officer averred in relevant part:

I observed a silver Chevy Malibu swerve out of its lane. The Chevy was in the far right lane of three lanes on the 6700 block of North Mopac. The vehicle did not indicate a lane change when it moved from the far right lane, to the center lane, then back to the right lane. There were no obstructions in the roadway and I did not observe any need to change lanes. I then observed the vehicle slow to less than 40 mph. I paced the vehicle for approximately 2 blocks at speeds less than 40 mph (38 mph). At that time we were in a 65 mph speed zone.

The officer testified at the suppression hearing, and the in-car recording of the traffic stop was admitted as an exhibit. The officer testified that he observed the vehicle make "almost a complete change" from the right lane to the center lane on Mopac Expressway and back to the right lane and that he "did not observe anything in the road." He described the movement of the vehicle as "abrupt" and agreed that it was the "kind of movement" that a driver would use to avoid something in the roadway. He continued to follow the vehicle, and it "slowed down to below 40 miles-an-hour." He answered "No, sir" when asked if there was any reason that he could see that would cause the vehicle to slow down to below 40 miles per hour. Shortly after the vehicle exited the expressway, the officer activated his overhead lights to pull the vehicle over. Appellant proceeded to turn left from a right lane at a traffic light and then pulled over. She did not use the vehicle's turn signal when making the left turn. The in-car recording did not capture the lane-to-lane movement on the expressway but otherwise is consistent with the officer's testimony.[1]

Although the trial court did not enter an order denying the motion to suppress, the trial judge entered findings of fact and conclusions of law adverse to appellant. The trial judge's findings of fact included: (i) the officer "observed the vehicle move from lane to lane without

_____

[1] According to the officer, the in-car recording did not begin until after appellant's vehicle had moved between the lanes on the expressway.

2

signaling and without an apparent reason" and "the vehicle slow to just under 40 miles per hour," (ii) appellant "turned left from the right lane without signaling," (iii) the officer "pulled over the vehicle," (iv) the officer "smelled alcohol on the breath of [appellant] and administered the standardized field sobriety tests," and (v) the officer "concluded that [appellant] was intoxicated and arrested her for driving while intoxicated." The trial judge's conclusions of law included that the officer "had reasonable suspicion to stop [appellant] in her vehicle after observing her commit the traffic offense of failing to signal intent to turn left from the right lane, a lane with the option to turn left or to proceed straight forward" and that the officer had sufficient suspicion to investigate for driving while intoxicated because of appellant's "driving, the time of night, and a strong odor of alcohol being on [appellant]'s breath."

Appellant filed a motion for new trial, which was denied after a hearing. This appeal followed.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is reviewed under an abuse of discretion standard. *Crain v. State*, 315 S.W.3d 43, 38 (Tex. Crim. App. 2010); *see also Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009) (stating that trial court abuses its discretion when its decision lies outside zone of reasonable disagreement). In a suppression hearing, the trial court is "the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010); *Carmouche*

3

*v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give almost total deference to a trial court's determination of historical facts and to rulings on mixed questions of law and fact when the resolution of those questions depends on the evaluation of credibility and demeanor. *State v. Johnson*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011); *Wilson*, 311 S.W.3d at 458; *Carmouche*, 10 S.W.3d at 327. We conduct a de novo review of the court's application of law to those facts, mixed questions of law and facts that are not dependent on an evaluation of demeanor and credibility, and purely legal questions. *Johnson*, 336 S.W.3d at 657; *Wilson*, 311 S.W.3d at 458; *Carmouche*, 10 S.W.3d at 327. We view all of the evidence in the light most favorable to the trial court's ruling, *see Johnson*, 336 S.W.3d at 657, and will uphold the ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

## DISCUSSION

In one issue, appellant contends that the trial court should have granted her motion to suppress. She urges that the officer's stated justifications—that he observed the vehicle "swerve" and driving slowly—were insufficient to justify a traffic stop, *see* Tex. Transp. Code §§ 545.060(a) (requiring driver not to move from lane unless movement can be made safely on roadway divided into two or more lanes), .363(a) (prohibiting slow driving that impedes normal and reasonable movement of traffic with exceptions), and that the trial court should not have relied on appellant's failure to use her turn signal to make the left turn when the officer did not rely on it and because it

occurred after the officer had already initiated the traffic stop by activating his vehicle's overhead lights. *See id*. § 554.104(a) (requiring use of turn signal to indicate an intention to turn).[2]

An officer may initiate a traffic stop when he reasonably suspects that the driver has violated the law. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *see also* U.S. Const. amend. IV; *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity." *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008) (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). "The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent." *State v. Kerwick*, 393 S.W.3d 270, 274 (Tex. Crim. App. 2013) (citing *Terry*, 392 U.S. at 21–22 and *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011)). In making the determination of whether reasonable suspicion existed, we consider the totality of the circumstances. *Ford*, 158 S.W.3d at 492; *Garcia*, 43 S.W.3d at 530.

"As long as an actual violation occurs," an officer may detain a person for that violation "regardless of the officer's subjective reasons for the detention." *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000) (citing *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992)). Appellant's failure to use her turn signal at the traffic light to indicate that she was turning left was a traffic violation. *See* Tex. Transp. Code § 545.104(a) (requiring use of turn

---

[2] Appellant focuses on the lack of traffic on the highway and the time between the lane changes and the vehicle's slow driving to support her argument that the officer's stated justifications for the stop were not sufficient.

signal to indicate intention to turn). Thus, even without the officer's observations of the lane changes and slow driving, the trial court properly concluded that the traffic stop was justified unless it should not have considered the un-signaled turn. *See Walter*, 28 S.W.3d at 542. To support her position that the trial court should not have considered the un-signaled turn, appellant contends that the officer did not observe or rely on it to justify the traffic stop and that it occurred after the officer initiated the stop.

We first consider appellant's contention that the trial court erred by considering the un-signaled turn because, according to appellant, the officer did not observe or rely on it to justify the traffic stop. Appellant contrasts the trial judge's finding that appellant "turned left from the right lane without signaling" with his findings as to what the officer "observed" to support her position that the fact findings are silent as to whether the officer actually observed the un-signaled turn at the time of the traffic stop. Appellant also focuses on the officer's failure to mention the un-signaled left turn in his affidavit for arrest and detention or in his report. Appellant, however, cites no authority for the contention that, when ruling on a motion to suppress, a trial court is limited to considering only the grounds stated in the officer's affidavit for warrant of arrest and detention or his report. Rather, the standard is "what a reasonable officer would have done with what he actually did see." *See State v. Duran*, 396 S.W.3d 563, 572 (Tex. Crim. App. 2013); *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011); *see also Aguilar v. State*, No. 03-11-00133-CR, 2012 Tex. App. LEXIS 1677, at *11 (Tex. App.—Austin Mar. 2, 2012, no pet.) (mem. op., not designated for publication) (noting that appellant "cites no authority for her contention that, when

6

ruling on a motion to suppress, the trial court is limited to considering only the ground stated in the officer's affidavit for warrant of arrest and detention").

We are guided by the court of criminal appeals' analysis in *State v. Duran*. As is the case here, the officer did not mention the traffic violation in his complaint affidavit or report. 396 S.W.3d at 571–72. The issue in that case was a factual one: did the officer "actually see a traffic violation before he detained [the defendant]?" *Id*. at 567. The court of criminal appeals deferred to the "totality of the trial judge's findings" that "supported a reasonable conclusion" that the trial judge did not believe the officer's testimony that he saw the traffic violation at issue before detaining the defendant. *Id*. at 571–72. The court noted that a "reviewing court must apply the same non-technical common-sense deference—not only to the trial judge's individual factual findings, but also to the totality of the findings." *Id.* at 566. Although the trial judge's findings of fact here did not include a finding that the officer "observed" the un-signaled turn, the trial judge concluded that the officer "had reasonable suspicion to stop defendant in her vehicle after *observing* her commit the traffic offense of failing to signal intent to turn left from the right lane, a lane with the option to turn left or to proceed straight forward." (Emphasis added.) Consistent with the analysis in *Duran*, we defer to the "totality of the trial judge's findings." *See id*. Because the trial judge found that the officer observed this traffic violation, in contrast with the findings in *Duran*, the traffic stop was justified on this basis alone. *See id.*; *Walter*, 28 S.W.3d at 542.

Appellant also urges that the trial judge should not have relied on the un-signaled left turn because the officer initiated the traffic stop by activating his overhead lights before appellant made the turn. This Court, as well as other courts, however, has confirmed that "events

7

occurring after the show of authority by the officers, i.e., when the emergency lights were activated, until appellant finally pulled over, are relevant to a determination of reasonable suspicion." *See Myers v. State*, No. 03-11-00078-CR, 2012 Tex. App. LEXIS 7527, at *12 (Tex. App.—Austin Aug. 28, 2012, no pet.) (mem. op., not designated for publication) (quoting *Gilbert v. State*, 874 S.W.2d 290, 295 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)); *see also Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995) (detention occurs when a person yields to display of authority); *Hudson v. State*, 247 S.W.3d 780, 785 (Tex. App.—Amarillo 2008, no pet.) (finding investigatory detention occurs when person stops in response to patrol car's emergency lights rather than on own accord).

We also note that an officer may be justified in stopping a vehicle based on a reasonable suspicion of driving while intoxicated, even without a traffic violation. *See Curtis v. State*, 238 S.W.3d 376, 379–80 (Tex. Crim. App. 2007) (finding that court of appeals failed to consider "rational inference" from "car weaving in and out of his lane several times, over short distance, late at night" in its determination of whether there was justification for detention). Here the traffic stop occurred in the early morning hours, and the officer testified that unnecessary lane changes and fluctuations of speed can be indications of driving while intoxicated. *See id.*; *Arroyo v. State*, No. 01-10-00136-CR, 2011 Tex. App. LEXIS 679, at *10–12 (Tex. App.—Houston [1st Dist.] Jan. 27, 2011, no pet.) (mem. op., not designated for publication) (collecting cases in which courts considered, among other facts, low rate of speed, time of day, and weaving in determination of whether there was reasonable suspicion of driving while intoxicated based on totality of circumstances).

Considering the totality of the circumstances, we cannot conclude that the trial court abused its discretion when it denied the motion to suppress. *See Ford*, 158 S.W.3d at 492; *Garcia*, 43 S.W.3d at 530.

## CONCLUSION

For this reason, we overrule appellant's issue and affirm.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   November 6, 2014

Do Not Publish