**Opinion issued July 11, 2019**



In The

# Court of Appeals

### For The

# First District of Texas

_____

## NO. 01-18-00189-CR

## NO. 01-18-00190-CR

_____

### JACOB ADAM RAMIREZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Case Nos. 16CR2618, 16CR2619**

---

### MEMORANDUM OPINION

Jacob Ramirez was convicted of possession of more than 4 grams but less than 200 grams of methamphetamine and possession of a firearm by a felon. *See* TEX. HEALTH & SAFETY CODE §§ 481.115(a), 481.115(c), 481.102(6); TEX. PENAL

CODE § 46.04(a). A jury found Ramirez guilty of both offenses. The court found two enhancement paragraphs true and sentenced him to 30 years' imprisonment for the drug conviction and 15 years' imprisonment for the gun conviction, with the sentences running concurrently. Ramirez appeals from both convictions. We affirm.

## Background

Ramirez drove south on a highway in Galveston County with a female passenger. They were driving a blue car that they had picked up at his mother's house. The car belonged to Ramirez's girlfriend. Trooper J. Cano of the Texas Department of Public Safety Highway Patrol Division observed Ramirez speeding past him on the highway near Galveston. Trooper Cano concluded that Ramirez was speeding, based on his training and experience, and then confirmed the speed on the radar. Trooper Cano also observed that the car had a temporary license plate that he could not read because it was flapping in the wind. He turned on his patrol lights and pulled over Ramirez.

Ramirez stopped on the inside shoulder of the highway. When Trooper Cano approached the car, he smelled marijuana and asked Ramirez to get out of the car. When asked for his identification, Ramirez stated that he did not have it with him and gave Trooper Cano a name and birthdate. Trooper Cano was unable to identify Ramirez with the information provided. Ramirez volunteered to Trooper Cano that

2

he was a member of the prison gang Tango Blast Houstones, but Trooper Cano was still unable to identify him. Ramirez said the car belonged to his cousin, an affiliate of another prison gang, who lived in Dallas. Trooper Cano noticed that Ramirez was nervous and stuttering, and his responses to questions were indirect and unclear.

Trooper Cano asked Ramirez about the marijuana smell, and Ramirez admitted that he had thrown a marijuana cigarette out of the vehicle before he was stopped. Trooper Cano searched the car. He immediately noticed a handgun on the driver's side floorboard, in between the door and the seat. He also observed an open can of beer and a vaporizer. Trooper Cano continued to search the vehicle and asked the passenger to get out of the car. He separated her from Ramirez by keeping her in front of the car while Ramirez was behind it, sitting on the patrol car's hood.

Trooper Cano found a scale and almost 15 ounces of marijuana on the floorboard behind the passenger seat. He found several small pills of different colors in a pill bottle in the glove compartment. The officer believed that the small pills were ecstasy. They were yellow, blue, and green colored, and stamped with the logo of a credit card company. He asked Ramirez if he knew what the pills were, and Ramirez replied that they were either ecstasy or "narco pills." Trooper

Cano did not know what "narco pills" were, and lab tests showed that the pills were methamphetamine.

While searching the car, Trooper Cano eventually found a piece of paper with a photo of Ramirez, listing his name and date of birth. He confronted Ramirez about it, and Ramirez admitted that he had lied about his identity because he knew of an outstanding warrant for his arrest. Trooper Cano arrested Ramirez.

At trial, the jury heard testimony describing these facts and watched a 45-minute video of the encounter taken from Trooper Cano's police car. A lab technician confirmed that the drugs recovered were methamphetamine weighing more than four ounces. He testified that in recent years, when tested, pills that look like ecstasy are methamphetamine. The jury also heard testimony from Ramirez's then-girlfriend who explained that the car belonged to her and she had left it at Ramirez's mother's house. She had hoped it would be repaired by someone in the neighborhood, and she left the keys with Ramirez's mother. She testified that she found the marijuana in her closet and put it in her car hoping to dispose of it, and she put the pill bottle in the glove compartment after discovering it in her bathroom. She knew there was a gun in the glove compartment, and she had it with her so that she could register it. When asked, she responded that she was not aware that registration is not required in Texas. Finally, the Ramirez's mother testified

4

that she gave the keys to the car to Ramirez after his girlfriend dropped it off. She never drove the car and did not look inside it.

The jury found Ramirez guilty of both charges and the trial court sentenced him to 15 years' imprisonment for the drug conviction and 30 years' imprisonment for the gun conviction, with the sentences running concurrently.

On appeal, he argues that there was insufficient evidence to convict him of either charge and that the trial court erred in denying his motion to suppress. We disagree and affirm.

## Sufficiency of the Evidence

Ramirez argues that there is insufficient evidence for the jury to have found beyond a reasonable doubt that he was in possession of methamphetamine and a firearm.

### A. Standard of Review

Every criminal conviction must be supported by legally sufficient evidence as to each element of the offense that the State must prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). To determine whether this standard has been met, we review all of the evidence in the light most favorable to the verdict, and we decide whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Acosta v. State*,

429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). The jury is the sole judge of witness credibility and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014). Direct and circumstantial evidence are equally probative. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). Not every fact presented must directly indicate that the defendant is guilty, so long as the cumulative force of the evidence is sufficient to support a finding of guilt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015).

## B.    Applicable Law

To establish unlawful possession of a firearm by a felon, the State must show that the accused was previously convicted of a felony offense and possessed a firearm after the conviction but before the fifth anniversary of his release from confinement, community supervision, parole, or mandatory supervision, whichever date is later. TEX. PENAL CODE § 46.04(a)(1); *Hawkins v. State*, 89 S.W.3d 674, 677 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware

of his control of the thing for a sufficient time to permit him to terminate his control. TEX. PENAL CODE § 6.01(b); *Hawkins*, 89 S.W.3d at 677.

To prove unlawful possession of a controlled substance, the "State must prove that (1) the accused exercised control, management or care over the substance; and (2) the accused knew what he possessed was contraband." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. HEALTH & SAFETY CODE § 481.002(38) ("'Possession' means actual care, custody, control or management.'").

We use the same standard to analyze the sufficiency of the evidence for possession of a firearm by a felon as we do for sufficiency of the evidence for possession of a controlled substance. *Corpus v. State*, 30 S.W.3d 35, 37–38 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Evidence which creates a reasonable inference that the accused knew of the existence of and exercised control over the contraband will suffice to meet the burden of the State. *Dickey v. State*, 693 S.W.2d 386, 389 (Tex. Crim. App. 1984). The evidence, whether direct, circumstantial, or both, must establish that the defendant's connection was more than fortuitous. *Evans*, 202 S.W.3d at 161; *James v. State*, 264 S.W.3d 215, 218–19 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). This is the "affirmative links" rule, "which protects the innocent bystander— a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous

proximity to someone else's [guns or drugs]." *Evans*, 202 S.W.3d at 161–62. "Mere presence at the location where [contraband is] found is . . . insufficient, by itself, to establish actual care, custody or control of [that contraband]." *Id.* at 162. "However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., 'links'), may well be sufficient to establish that element beyond a reasonable doubt." *Id.*

Links that may circumstantially establish the sufficiency of the evidence to prove knowing possession include:

> (1) the defendant's presence when a search is conducted;
>
> (2) whether the contraband was in plain view;
>
> (3) the defendant's proximity to and the accessibility of the contraband;
>
> (4) whether the defendant was under the influence of narcotics when arrested;
>
> (5) whether the defendant possessed other contraband when arrested;
>
> (6) whether the defendant made incriminating statements when arrested;
>
> (7) whether the defendant attempted to flee;
>
> (8) whether the defendant made furtive gestures;
>
> (9) whether there was an odor of contraband;
>
> (10) whether other contraband or drug paraphernalia were present;
>
> (11) whether the defendant owned or had the right to possess the place where the contraband was found;

8

(12) whether the place where the drugs or guns were found was enclosed;

(13) whether the defendant was found with a large amount of cash;

(14) whether conflicting statements on relevant matters were given by the persons involved;

(15) whether the defendant's conduct indicated a consciousness of guilt.

*Id.* at 162 n.12. (drugs); *James*, 264 S.W.3d at 219 (firearms); *Corpus*, 30 S.W.3d at 38 (firearms). The absence of any of these various links does not constitute evidence of innocence to be weighed against the links present. *Williams v. State*, 313 S.W.3d 393, 398 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Instead, we measure the sufficiency of the evidence by looking to the logical force of all of the evidence, rather than tallying the links present in a given case. *Id.*; *Evans*, 202 S.W.3d at 162 ("It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial.").

We address the sufficiency of the evidence for each conviction in turn.

## C.     Sufficiency for gun conviction

Reviewing the evidence in the light most favorable to the jury's verdict, we conclude that sufficient evidence supports Ramirez's conviction for unlawful possession of a firearm by a felon.

Ramirez argues that there was insufficient evidence that he was aware of the firearm in the vehicle. The firearm's owner was Blanca Longoria. Longoria

testified that she kept the gun in her car: sometimes in the glove compartment, sometimes under a seat, and sometimes in the trunk. When asked where the gun was when she dropped her car off at Ramirez's mother's house, she testified first that she did not know, but when asked again she said it was in the glove compartment. Ramirez argues that Longoria's recollection, without fingerprint evidence, is not enough to prove he knew of the firearm. We disagree.

Ramirez was driving the car. The jury heard testimony from Trooper Cano that he saw a firearm and an open can of beer when he approached the driver's side of the car. The gun was on the driver's side of the car between the seat and the door. In Trooper Cano's opinion, a person would notice the gun when getting into the car. Ramirez told Trooper Cano that he knew who owned the gun. The jury watched video of the encounter and could observe Ramirez's nervousness and conflicting and false statements to Trooper Cano.

Viewing the evidence in a light most favorable to the jury's verdict, the record establishes several links between Ramirez and the weapon. Ramirez was near the weapon, which was located within inches of his legs and within easy reach. He was nervous when interacting with Trooper Cano and attempted to conceal his identity, and he told law enforcement that he knew who owned the gun. A rational jury could have found these circumstances sufficient to show Ramirez's

knowing possession of the firearm. *James*, 264 S.W.3d at 220. We hold that the evidence is legally sufficient to support the jury's finding.

We overrule Ramirez's first issue.

## D.  Sufficiency for drug conviction

Reviewing the evidence in the light most favorable to the verdict, we find that the evidence was sufficient to enable a rational juror to find beyond a reasonable doubt that Ramirez exercised care, custody, control, or management over the pills found in the car, and it likewise was sufficient to establish that he knew the pills were contraband. He was driving the car in which the pills were found in the glove compartment; Trooper Cano detected the odor of marijuana when he approached the side of the car; additional contraband was found in the passenger area of the car including nearly a pound of marijuana, a vaporizer, an open container of beer, a scale, and, within Ramirez's reach, a handgun; Ramirez gave conflicting accounts of his identity; Ramirez told the officer he was the only person willing to drive the car; and Ramirez admitted that knew who pressed the pills and that the pills were ecstasy or "narco pills."

The evidence is sufficient to establish that the substance found in Ramirez's car contained methamphetamine, was visible, and weighed more than four grams. "If the controlled substance can be seen and measured the amount is sufficient to establish the defendant knew it was a controlled substance." *Victor v. State*, 995

11

S.W.2d 216, 220 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). In contrast, "[w]hen the quantity of a substance possessed is so small that it cannot be quantitatively measured, there must be evidence other than its mere possession to prove that the defendant knew the substance in his possession was a controlled substance." *Shults v. State*, 575 S.W.2d 29, 30 (Tex. Crim. App. 1979). The lab technician testified that the pill bottle contained more than four grams of methamphetamine, and that in his experience over the past seven years, pills submitted for testing that look like ecstasy or MDMA are actually methamphetamine. Because the substance contained methamphetamine and can be seen and measured, "[t]he amount is sufficient to establish the defendant knew it was a controlled substance." *Victor*, 995 S.W.2d at 220.

Ramirez argues that the evidence is insufficient to establish that he knew the substance was methamphetamine particularly. Ramirez suggests that his statements that the substance was a different drug demonstrate that he did not know the substance was methamphetamine. The State argues that it was only required to prove that he knew the substance was a controlled substance.[1] We need not resolve this argument, however. While it is undisputed that Ramirez made the statement to the officer that the pills were "narco pills" or ecstasy, there was no requirement for

---

[1]  *But see King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995) ("Therefore, the State must prove, through other evidence, that appellant had knowledge that the substance in his possession was cocaine.")

the jury to conclude that this statement was honest and credit it. "With respect to testimony of witnesses, the jury is the sole judge of the credibility and weight to be attached thereto, and when the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination." *Thomas*, 444 S.W.3d at 8; *see also Lamb v. State*, No. 01-14-00901-CR, 2015 WL 6933120, at *4 (Tex. App.—Houston [1st Dist.] Nov. 10, 2015, pet. ref'd) (mem. op., not designated for publication) (discussing that jury was sole judge of witness credibility, including defendant's statement to police that drug was a different type). Given Ramirez's deceptive statements to the officer, a jury could have disbelieved Ramirez's statement about the type of drug. Because this determination would support the jury's verdict, we must defer to that determination. *See Thomas*, 444 S.W.3d at 8.

We overrule Ramirez's second issue.

## Motion to Suppress

Ramirez argues that the trial court erred in denying his motion to suppress because the officer did not have reasonable suspicion to stop him. We disagree.

### A. Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for abuse of discretion and

13

review the trial court's application of the law to the facts de novo. *Id.* Almost total deference should be given to a trial court's determination of historical facts, especially those based on evaluation of witness credibility or demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When the trial court does not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *Walter v. State*, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). We will defer to the trial court's findings of fact and not disturb the findings on appeal unless the trial court abused its discretion in making a finding not supported by the record. *See Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

## B.    Analysis

To justify a traffic stop, a law enforcement officer must have reasonable suspicion. *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011). Reasonable suspicion exists when an officer is aware of specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a person has engaged in, is engaging in, or soon will be engaged in

criminal activity. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). The reasonable suspicion standard is objective, requiring only "some minimal level of objective justification" for the stop. *Id.*; *see also Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Whether the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact subject to de novo review. *Hamal*, 390 S.W.3d at 306.

A traffic violation committed in an officer's presence is sufficient to authorize an initial traffic stop. *See Walter*, 28 S.W.3d at 542. The criminal activity relied on by the State to support the traffic stop was driving at an unsafe speed, TEX. TRANSP. CODE § 545.351, and failure to display a license plate tag in accordance with administrative rules, TEX. TRANSP. CODE § 503.069. The Administrative Code states that all printed information on a temporary license plate must be unobstructed and secured to the car so that "the entire plate is visible and legible at all times." TEX. ADMIN. CODE § 215.151.

Trooper Cano testified that he observed Ramirez's car speeding on the highway, he confirmed the speed with his radar, and the car was going 73 miles per hour in a 65 miles per hour zone. He could not read the car's temporary license plate because it was not secured correctly and was flapping in the wind.

Ramirez argues that Trooper Cano's testimony about Ramirez's speeding was not credible because Trooper Cano did not put Ramirez's speed in his police

report and because he later testified that the car was a different color at trial.[2] He also argues that although Trooper Cano testified that he knew Ramirez was speeding based on his training and experience confirmed by his radar, Trooper Cano could not have differentiated between Ramirez's car and surrounding cars driving by at the same time. But we must defer to the trial court's resolution of conflicts in the evidence and credibility determinations. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). Moreover, Trooper Cano's trial testimony that the car was a different color occurred after Ramirez raised his motion to suppress his arrest and the trial court denied it. *See Gutierrez*, 221 S.W.3d at 687 (appellate court considers additional trial evidence only if motion to suppress is relitigated at trial). Ramirez did not ask the trial court to reconsider its ruling on the motion to suppress based on the evidence upon which he now relies on appeal. *See Black v. State*, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012) (ruling on motion to suppress is interlocutory, and trial court may reconsider its ruling at any time before end of trial.).

Viewing the evidence in the light most favorable to the trial court's ruling and deferring to the trial court's resolution of contradictory evidence and determinations regarding witness credibility, we hold that the trial court did not

---

[2]  Trooper Cano first testified that the car was maroon and later, when shown a photo of the car, acknowledged that the car was blue.

abuse its discretion in denying Ramirez's motion to suppress. *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).

We overrule Ramirez's third issue.

## Conclusion

We affirm the judgment of the trial court.

Peter Kelly
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).